ADJUDGED IN

# THE COURT OF CHANCERY

OF

## THE STATE OF NEW JERSEY.

## 1923.

---

EDWIN ROBERT WALKER, CHANCELLOR.

---

EDMUND B. LEAMING, VIVIAN M. LEWIS, JOHN H. BACKES, JOHN GRIFFIN, JOHN E. FOSTER, MALCOLM G. BUCHANAN, JAMES F. FIELDER, ALONZO CHURCH, ·ROBERT H. INGERSOLL AND JOHN BENTLEY, VICE-CHANCELLORS.

---

MARY AGNES DOLAN, otherwise Wagner, petitioner,

*v.*

JAMES H. WAGNER, defendant.

[Decided July 16th, 1923.]

The wife was already married, and knew she was not divorced (although she had a decree *nisi*) when she went through the ceremony of marriage she now seeks to annul—it does not appear whether or

1

not the defendant knew she was divorced, but, whether the husband is an innocent party or one *in pari delicto*, the marriage should be annulled on the ground of public policy, even at the wife's suit, the second marriage not being voidable merely, but absolutely void *ab initio*, and the decree sought being one declaratory of the status of the parties as it existed.

On final hearing, on master's report and depositions, *ex parte*.

*Mr. Robert Newton Crane*, for the petitioner.

WALKER, CHANCELLOR.

This is a suit for nullity of marriage. The petitioner was already married when she went through the ceremony of marriage she now seeks to annul, but says that she believed herself to have been divorced. The fact is that she at that time had a decree *nisi*, which was not made absolute, until after her marriage with defendant in this suit. She says she was given to understand by her solicitors that the decree *nisi* was an absolute divorce, and that she was legally competent to contract matrimony, and that it was only after she had been married some time to the defendant that she discovered the true situation, without saying how she discovered it. Neither of her solicitors was called as a witness. The other facts, namely, the second marriage, the decree *nisi*, and the residence of the petitioner, are proved. The question therefore sharply arises as to whether the offending party—and the petitioner is in that class, for she is presumed in law to have known and understood the nature and limitation of her decree *nisi*—is entitled to sue for and obtain a decree of annulment of the bigamous marriage. The question is squarely presented whether a person who has fraudulently contracted a bigamous marriage should be permitted to obtain a decree to annul it, or whether, in virtue of the doctrine of clean hands, annulment should be denied, presuming the other party to be innocent.

The petitioner in her testimony says that in 1908 she instituted a suit in this court against her husband for a divorce on the ground of desertion, and on June 25th, 1908, received a divorce decree from her solicitors, divorcing her from the bonds of matrimony. She was incompetent to testify as to the character of the decree. It speaks for itself. *In re McCraven, 87 N. J. Eq. 28.* She says she was given to understand by her solicitors that the decree was an absolute one, that she was legally competent to marry, which she did on October 10th, 1908, and that she entered into marriage with the defendant in good faith, believing that she was legally divorced from her former husband. The solicitors were not called, and if they had been I believe they would have flatly contradicted her as to the character of the advice they gave, and I am satisfied that she never understood from them that such a decree was a final decree, or that she was legally competent to enter into the marriage relation. Her final decree was not filed and entered until some time after her marriage with the present defendant, and had the court known of her marriage at the time the final decree was applied for it would have been withheld and the decree *nisi* vacated because of her adulterous conduct *pendente lite*. The defendant may have been an innocent party to this marriage, and presumably he was. The case will be decided upon the assumption that the petitioner knew that she was not divorced and perpetrated a fraud upon the defendant.

In *Rooney* v. *Rooney, 54 N. J. Eq. 231,* Vice-Chancellor Pitney held that the complainant procured the defendant to marry him by practicing upon her a fraud so gross as to close against him the doors of a court of equity to annul their marriage because it was bigamous, he having a former wife living, from whom he fraudulently represented himself to have been divorced. And the learned vice-chancellor holds that the case is one of an equitable nature in a court of equity, and that the maxim, he who comes into equity must come with clean hands, applies.

*Schaffer* v. *Schaffer, 88 N. J. Eq. 192,* was a suit for annulment on the ground that the wife was not divorced from a living husband at the time of her marriage to the petitioner.   Vice-Chancellor Backes held that the evidence was not sufficient to establish the prior marriage, denied the prayer of the petition for annulment, and granted alimony on the wife's counter-claim.   And he said (at *p. 196*) : "Then, too, so far as respects relief to the petitioner, the doctrine of 'clean hands' would bar him if we looked upon the cohabitation as continuously criminal.   *Rooney* v. *Rooney, 54 N. J. Eq. 231; Kretz* v. *Kretz, 73 N. J. Eq. 246; Freda* v. *Bergman, 77 N. J. Eq. 46."*   This latter observation is *dictum,* and indicates an alignment of the case with *Rooney* v. *Rooney, supra,* and the application of the doctrine of clean hands to save the wife's support in any event.

*Davis* v. *Green, 91 N. J. Eq. 17,* was on a petition for annulment of marriage on the ground that at the time of the marriage to the defendant the petitioner was the lawful wife of another man.   She brought the suit.   Vice-Chancellor Leaming said (at *p. 18*) that the case differed from the *Rooney Case* by the circumstance that neither party was guilty of fraudulent concealment from the other since both knew that the wife had a husband who was alive at the time, and both knew that their marriage was unlawful by reason of that fact; that they were *in pari delicto;* and he further said (at *p. 19*) that while the general rule is that where the parties are in *pari delicto,* no affirmative relief will be given to one against the other, the rule has always been regarded by courts of equity as without controlling force in all cases in which public policy is considered as advanced by allowing either party to sue for relief against the transaction.   And he goes on to decide, adopting the English doctrine, that the petitioner is entitled to relief.   The English doctrine in favor of decrees of nullity in this class of cases he states generally, as follows: To prevent the circumstances which might in future take place from death of witnesses or other occurrences rendering proofs difficult or uncertain; that an

examination of the reported cases will disclose that the fundamental reason for awarding decree of nullity at the instance of either party is for the protection of public interests, and not because of inability or hesitancy on the part of the courts to recognize and apply the equitable maxim in all appropriate cases; that it is the duty of the court to the public to declare the situation of the parties; that either party may bring suit to have the marriage declared null and void on the ground that it is material for their own sakes, and that of the public, that their status should be known; that it may be necessary for the convenience and happiness of families, and the public likewise, that the real character of these domestic connections should be ascertained and known; that the cases he cites were all in suits for decrees declaring marriages void for causes which the statute declared operative to render them null and void *ad initio,* such as precontract and the like; but that in cases where the marriages were voidable only the courts appear to have discerned no such public interests, and to have been accordingly free to deny relief to the wrong-doer since the status of the parties in such circumstances, in the absence of a decree, was regarded as already fixed by their marriage; that the view adopted was that no such public interests exists in cases of marriages voidable only.

In *Gibbs* v. *Gibbs, 92 N. J. Eq. 542,* Vice-Chancellor Buchanan (at *p. 546*) held that in a suit to annul a bigamous second marriage, the equitable doctrine of unclean hands, or *in pari delicto,* must be subordinated to public policy, is undoubtedly true, citing *Freda* v. *Bergman, 77 N. J. Eq. 46,* and *Davis* v. *Green, supra.*

In *Freda* v. *Bergman, supra,* Vice-Chancellor Stevenson had before him a case for nullity of marriage. It was brought by the husband against the wife. It was an *ex parte* case, and the master reported that the marriage in question was null and void, and that the complainant was not entitled to a decree, because he was cognizant of the prior marriage of the defendant, and that it remained undissolved.

The proofs failed to satisfy the vice-chancellor that the complainant believed the defendant was still the wife of the man whom she had formerly married, and he said (at *p. 51*) that the bar to relief set up by the *Rooney Case,* whatever might be its exact scope, or by other American cases, must, he thought, necessarily include guilt, bad faith on the part of the complainant in entering into the bigamous marriage, and he advised a decree of nullity. In the body of the opinion (at *p. 49*) the learned vice-chancellor observed: "The complainant is not asking a court of equity to aid him in securing the proceeds of any crime or other wrong-doing on his part. There is a wide difference between the large classes of cases where complainants are denied 'relief' in a court of equity because they come into that court with unclean hands, and this unique decree, which is rendered in a suit merely to establish the fact that a marriage was null and void *ab initio.* The complainant's benefit from this decree, as I have endeavored to suggest above, is oftentimes a negligible quantity compared with the benefit which innocent parties and the state may derive from such decree. The complainant is not asking for any property; he is merely asking for a judicial declaration of a fact to which the court cannot shut its eyes, and in the ascertainment of which great interests beyond those of the complainant may be involved."

Now, the Divorce act (*Comp. Stat. p. 2021 § 1 subdiv. 1*) provides that decrees of nullity of marriage may be pronounced in all cases when either of the parties has another husband or wife living at the time of a second or other marriage; and subdivision 6 provides that where the marriage is dissolved because either of the parties has another husband or wife living at the time of a second or other marriage, such marriage shall be deemed void from the beginning.

In view of these provisions the language of Vice-Chancellor Stevenson in the *Bergman Case* (at *p. 49*) is apposite. He says: "In many cases of the class under consideration the decree dismissing the bill on the ground that the complainant was either alone guilty or *particeps criminis* with

the defendant, would seem to establish the nullity of the marriage." And so it does. The statute makes it null, and a decree of nullity is only a judicial ascertainment and pronouncement of the fact.

The complainant, even though he or she be guilty of perpetrating a fraud upon the defendant in inveigling her or him into a marriage by representing himself or herself to be a single person, has, I think, the right to seek the judicial declaration of nullity on the ground of public policy, which is quite fully exploited by Vice-Chancellor Leaming in *Davis* v. *Green, supra.*

It is true that the petitioner claims that she understood that the decree *nisi* was a final decree of divorce and enabled her to marry again, but I cannot accept her say so to that effect. It is enough to say, in disposing of this contention, that the wife is presumed to have known the law (*Taub* v. *Taub, 87 N. J. Eq.,* at *p. 630*) and was a guilty party, although, for aught that appears, the defendant may have been *particeps criminis.*

The *Rooney Case,* as said by Vice-Chancellor Stevenson in *Freda* v. *Bergen, supra* (*77 N. J. Eq.,* at *p. 47*), when confined to its facts, merely decided that when a married man induces a woman innocently to go through a form of marriage with him by falsely representing himself to be single, and cohabitation and pregnancy of the woman thereupon follow, he cannot come into a court of equity and relieve himself of his obligation to support his victim by obtaining a decree declaring his bigamous marriage void.

In this case, because the marriage is absolutely void, the petitioner, on the ground of public policy, is entitled to a decree so pronouncing it, the distinguishing features of the *Rooney Case* not being present. If this marriage were voidable only the clean hands doctrine would apply.

The result reached is that a decree of nullity should be pronounced.

Decree *nisi* accordingly.

## ADDITIONAL MEMORANDUM

[Filed September 26th, 1924.]

In the above stated cause I recently filed an opinion in which I held: "The wife was already married, and knew she was not divorced [although she had a decree *nisi*] when she went through the ceremony of marriage she now seeks to annul; it does not appear whether or not the defendant knew she was divorced, but, whether the husband is an innocent party or one *in pari delicto*, the marriage should be annulled on the ground of public policy, even at the wife's suit, the second marriage not being voidable merely, but absolutely void *ad initio*, and the decree sought being one declaratory of the status of the parties as it existed."

At that time I had not seen the case of *Tyll* v. *Keller, 94 N. J. Eq. 426; 1 N. J. Adv. R. 317,* where the court of errors and appeals held: "One who asks annulment of his marriage with a woman who had another husband living at the time of her marriage with the petitioner, must show by a preponderance of evidence that when he married her he was ignorant of the fact that she then had a husband living from whom she had not been divorced."

Here is an unequivocal declaration, as I take it, that the doctrine of clean hands applies in this class of cases, and that no one can successfully annul a marriage who entered into it with knowledge that either one had a former spouse living, although, upon the authorities I cited, I was at the time clearly of opinion that the clean-hands doctrine did not apply where the suit was to annul a bigamous marriage. I was of opinion that public policy required the annulment of such a marriage.

Upon the authority of *Tyll* v. *Keller* I am constrained to vacate the decree *nisi* in this case, and to dismiss the petition for nullity.