Defendant herein married Wilbur F. Kessler, at Elkton, Maryland, October 11th, 1922. July 16th, 1924, defendant herein filed a petition in this court for a decree declaring that marriage to have been null and void by reason of her having been under age at the date of that marriage. In that suit no defense was made, but on the master's report the relief sought was denied; the petition was dismissed March 6th, 1925.
Thereafter — August 10th, 1925 — defendant herein filed in this court a petition for divorce against Kessler, setting forth the marriage to Kessler on October 11th, 1922, and alleging a willful, continued and obstinate desertion by her husband from that day. No defense was made in that suit. The testimony was taken April 9th, 1926, before the master to whom the case had been referred, and on a favorable report filed by the master April 10th, 1926, a decree nisi was entered May 7th, 1926, and a final decree of divorce was entered November 8th, 1926.
January 13th, 1926, pending her divorce suit against Kessler, defendant herein contracted a ceremonial marriage with William B. White, the present petitioner, and White and defendant thereafter cohabited as husband and wife during the pendency of defendant's divorce suit against Kessler and until after the final decree had been entered therein. White, the present petitioner, now seeks a decree annulling his marriage to defendant. It is admitted that at the time of White's marriage to defendant he knew of her prior marriage to Kessler and that Kessler was alive, and knew of the pendency of the divorce suit against Kessler, and assisted defendant in procuring that divorce; the fact of defendant's marriage to and cohabitation with petitioner was concealed from the master before whom the divorce suit was pending. *Page 371 
Petitioner's petition for a decree of annulment of his marriage to defendant is wholly based on an averment that at the time of his marriage defendant was the lawful wife of Kessler. Two children, now living, have been born of defendant's marriage to petitioner; none by Kessler.
Petitioner's claim now is that at the time of his marriage to defendant and up to the time of their separation he believed that defendant's marriage to Kessler was void. His testimony in that respect is that prior to his marriage to defendant he was told by defendant that she and Kessler had never consummated their marriage by sexual intercourse, and that in consequence she was not the lawful wife of Kessler. That, he says, he believed to be the law, and in consequence he married defendant and thereafter cohabited with her as his wife and assisted in the procurement of the divorce from Kessler in that innocent belief.
Accordingly, it is now urged that because of this absence of wrongful intent on the part of petitioner herein, arising from a want of knowledge of the law, petitioner should not be denied the relief now sought by him, notwithstanding the fact that at the time of his marriage he knew of the prior marriage of defendant to Kessler and knew that Kessler was alive and had not been divorced, and not only knew that the divorce suit against Kessler was pending but assisted in prosecuting it and cohabited with defendant during the pendency of the divorce suit and thereafter, and also obviously knew of the necessity of concealing his marriage to defendant, since he took petitioner to New York to be married there in order to keep secret the fact that he had married her.
This narrows the present controversy to the single question whether in these circumstances relief should be denied petitioner by reason of his wrongful conduct.
Prior to Tyll v. Keller, 94 N.J. Eq. 426, decided by our court of errors and appeals in 1922, there existed a line of decisions in this court to the effect that in suits for nullity of marriage contracts which were rendered void ab initio by our statute, and in which suits no property rights were involved, the equitable doctrines ordinarily regarded as adequate *Page 372 
to deny relief to a suitor in this court should be subordinated to considerations of public policy demanding that the status of the parties be declared for the protection of public interests. In the first opinion prepared by Chancellor Walker in Dolan v.Wagner, 95 N.J. Eq. 1, these decisions are reviewed at length and followed by him. In the supplemental opinion filed by him in the same case (Ibid. 8) he regards Tyll v. Keller as overruling these decisions, and because of the wrongful conduct of petitioner in contracting a second marriage after a decreenisi had been procured in her favor against her then husband and before the decree final had been entered he refused to adjudicate the marital status and dismissed her petition for a decree of nullity.
This view of our chancellor touching the effect of Tyll v.Keller, in the respect referred to, is here conclusive, and necessitates a decree in this case dismissing the petition. The specific declaration in Tyll v. Keller is that the petitioner was entitled to the relief which he sought "provided that when he married the respondent he was ignorant of the fact that she then had a husband living, from whom she had not been divorced." The burden of establishing his ignorance of that fact was declared to be on the petitioner, and failing to establish his innocence in that respect relief was denied him.
The claim of innocence on the part of petitioner herein is wholly based on his alleged mistaken notion of the law to the effect that if no sexual intercourse had occurred between defendant and Kessler their marriage was void. Petitioner herein must be assumed to have known to the contrary and to have known that until the marriage of defendant to Kessler should have been dissolved by death or divorce his marriage to her was unlawful. For present purposes it is here assumed that petitioner did not know that to be the law, although the secrecy of his marriage to defendant strongly indicates to the contrary. In marrying defendant with a full knowledge of all the facts relating to her marital status petitioner herein must be assumed to have known that his marriage to her was bigamous and unlawful and that his secret cohabitation with her during the pendency of her divorce suit was *Page 373 
criminal, and that the concealment of these things from the master before whom the divorce case was pending was a fraud on this court. In these circumstances this court should not now aid him. The ancient maxim Ignorantia juris non excusat is everywhere recognized and uniformly enforced, when applied to mistakes of the general rules of law, and the paramount necessity of basing personal responsibility for human conduct upon that maxim, when so applied, appears to be everywhere recognized. This view has been recently adopted by Vice-Chancellor Fallon inKeller v. Linsenmyer, 101 N.J. Eq. 664.
A decree will be advised dismissing the petition.