AMELIA R. SPARKS et al.

*v.*

CHARLES S. ROSS et al.

[Submitted January 22d, 1907. Decided February 1st, 1907.]

1. When a feigned issue is framed in equity and sent to a law court for trial before a jury, it is proper for the trial court to direct a verdict if the evidence justifies the peremptory instruction given.

2. A ceremonial marriage was followed by fifteen years' cohabitation, and terminated only by the death of the husband. During that time a family of children was raised by the parties to the marriage. These facts created a powerful presumption of the legality of the marriage. To have overcome this presumption sufficiently to have justified an instructed verdict against its legality, the evidence of a prior marriage should have been conclusive in its nature.

3. The presumption of legality arising from a ceremonial marriage, followed by cohabitation of the parties as husband and wife, is founded upon the motives which govern human conduct and upon the policy of our social system. The conclusion of illegality involves the assumption that the parties have exposed themselves to the penal consequences of illegal acts, and operates to bastardize their offspring. The strength of the presumption increases with the lapse of time through which the parties have cohabited as husband and wife.

4. Certain proofs offered of a prior marriage *held* to be insufficient to justify an instruction against the presumption of legality of a subsequent marriage, followed by long cohabitation.

On bill to quiet title. Motion for new trial on return of *postea* of feigned issue.

Complainants filed a statutory bill to quiet title. At the preliminary hearing in this court complainants were found to be in peaceable possession of the land in question. Defendants demanded an issue at law for the trial of the controverted facts upon which title depended under the issues as framed, and a feigned issue was accordingly awarded by this court. At the trial before the law court a verdict was rendered in favor of complainants (defendants in the feigned issue) by direction of the

trial court, and a motion for a new trial is now made in this court on the return of the *postea* to the feigned issue.

The sole question for determination by the issue at law, as framed, was whether the marriage which was celebrated between Edmund B. Ross and Mary Cavnaugh, October 24th, 1873, was a lawful marriage, or whether on that date, and until his death, Edmund B. Ross was the lawful husband of Maria Moose, and therefore incapable of marriage with Mary Cavnaugh. The purpose of that issue was to ascertain whether the children of Edmund B. Ross, born to him by Mary Cavnaugh, were born in lawful wedlock. The verdict instructed by the trial court was as follows:

"You will find for the defendants that Edmund B. Ross was, on the 24th day of October, 1873, the husband of Maria Moose, and continued to be her husband until his death, and that the said Maria Moose is still living."

The evidence offered by the plaintiff in the feigned issue consisted of the testimony of Mary Ross, formerly Cavnaugh, and two of her sons, Clarence and Charles, and of one Emma Scull. Mary testified to her marriage to Edmund Ross October 24th, 1873, at Bridgeboro, New Jersey, and produced her marriage certificate, which was received in evidence without objection; that she and her husband resided together as husband and wife from the date of her marriage until his death, July 19th, 1888; that, except the first year or so, they resided, during all of that time, in South Jersey; that nine children were born to them, three of whom are now living; that she never heard of Maria Moose, or of any prior marriage of her husband, until about the time of this litigation. Her two sons testified that they never heard of Maria Moose until this litigation. Emma Scull testified to her knowledge of Mary and Edmund living together as husband and wife and having children.

The evidence offered by defendant in the feigned issued consisted of—*first,* depositions of Maria Prehl. Maria testified that her maiden name was Maria Moose, and that she was married to Edmund B. Ross December 4th, 1862, at the home of her parents near Bridgeport, New Jersey; that Edmund resided with her,

at her parents' home, until the following spring, when he went away, at the invitation of his father-in-law, and they never resided together afterwards; that she saw Edmund but once thereafter, namely, in the following summer, when he, with a gentleman friend of his, drove to the house of her parents, but did not get out of the wagon; that she, at the time, was in the garden; that a child was born to her October 23d, 1863, named Joseph, who died at ten years of age; that she married Augustus Prehl July 21st, 1870, and then knew that Edmund Ross was alive; that she destroyed her first marriage certificate when she remarried. Arthur J. Hendrickson testified that he had known Maria from her childhood and that she and Edmund Ross resided together at one time at the home of Maria's parents; that he understood them to be married; as to how long they lived there together he was uncertain; that Maria had a son named Charley. Mary Adamson testified that she knew Maria and Edmund and that some forty-two or forty-three years ago Edmund stopped at her home and said that he was married to Maria and that he was on his way there; that she knew, in a general way, that Edmund resided with the Moose family for a time, but that she never actually saw him there. A record book of marriages from the county clerk's office of Gloucester county was offered and received in evidence. It contained the record of a certificate signed "Jacob Loudenslager, Elder of the M. E. Church," certifying that he had married Edmund B. Ross and Maria Moose December 4th, 1862. The certificate bore no date but was recorded July 29th, 1864. A diary, shown to have been a diary of Jacob Loudenslager, now deceased, was offered and received in evidence. This diary contains an entry indicating that Jacob Loudenslager married these parties on the date named. George L. Dobbins, a Methodist minister, testified that in the Methodist church the word "Elder" imports an ordained minister of the gospel.

*Mr. Thomas E. French,* for the complainants.

*Mr. Thomas J. Middleton* and *Mr. John J. Crandall,* for the defendants.

LEAMING, V. C.

I have reached the conclusion that the learned trial judge erred in instructing a verdict at the trial of the feigned issue in this cause. There can be no doubt of the right and propriety of a binding instruction in the trial of a feigned issue where the evidence justifies the instruction given, but the evidence must be such that a verdict contrary to the instruction could not stand. The evidence against which the peremptory instruction was given disclosed a ceremonial marriage followed by a cohabitation of the parties as man and wife for over fifteen years, and then terminated only by the death of the husband. During that period they raised a family of children, and, except for the first year or so, resided in the same general section of this state where the alleged first wife resided. This raised a powerful presumption of the legality of the marriage against which a binding instruction could only be properly given when that presumption was clearly overcome. The power of the presumption of legality of such a marriage is found in the motives which govern human conduct and in the policy lying at the base of our social system. The conclusion of illegality involves the assumption that the parties have exposed themselves to the penal consequences of illegal acts and operates to bastardize their offspring. Their conduct during the fifteen years was a living declaration of its legality. It is manifest that the evidence of a prior marriage should be conclusive before such presumption of legality can be said to be clearly and wholly overthrown. Touching this presumption of legality the text of *1 Bish. Mar., D. & S.* § *956,* is as follows:

"Every intendment of the law leans to matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of the proofs, the law raises a strong presumption of its legality, not only casting the burden of proof on the party objecting, but requiring him throughout, in every particular, to make plain, against the constant pressure of this presumption, the truth of law and fact that it is illegal and void. So that this issue cannot be tried like the ordinary ones, which are independent of this special presumption. And the strength of the presumption increases with the lapse of time through which the parties are cohabiting as husband and wife, it being for the highest good of the parties, of the children and of the community, that all intercourse between the sexes in form matrimonial should be such in fact, the law, when

administered by enlightened judges, seizes upon all probabilities and presses into its service all things else which can help it, in each particular case, to sustain the marriage and repel the conclusion of unlawful commerce."

In *United States* v. *Green, 98 Fed. Rep. 63*, Judge Shiras held that such a presumption was not overcome by proof of a prior ceremonial marriage, unless it should be also proven affirmatively that at the time of the prior marriage the parties were free from disabilities against a lawful marriage.

The evidence offered to establish a prior marriage is not, to my mind, of sufficient power to so clearly overthrow this presumption of legality as to warrant the peremptory instruction given. In the absence of positive evidence that "Jacob Loudenslager, Elder of the M. E. Church," was, in fact, at the time claimed, a stated and ordained minister of the gospel, the record of marriages and the diary offered in evidence carry but faint probative force.

Indeed, it is doubtful whether the marriage record is admissible in evidence as a statutory record in view of the requirement of the statute that the certificate be lodged with the recording officer within six months of the date of the marriage, whereas the record offered in evidence was made two years after the alleged marriage. See *People* v. *Etter, 81 Mich. 570, 573*. The testimony of the witnesses who were sworn in support of the prior marriage cannot properly be said to be of that character which commands absolute acceptance or affords a conclusive demonstration of the fact sought to be established.

A new trial will be advised.