JOHN C. TYLL

*v.*

ANNA KELLER.

[Decided March 5th, 1923.]

1. The law presumes a continuance of life until seven years have elapsed from the time the person was last heard from, but such presumption is not conclusive, and where it would render the party against whom it is raised guilty of a bigamous marriage, and would stamp his child as a bastard, the presumption of innocence of crime overcomes that of continuance of life, even though seven years have not elapsed.

2. One who asks annulment of his marriage with a woman who had another husband living at the time of her marriage with the petitioner, must show by a preponderance of evidence that when he married her he was ignorant of the fact that she then had a husband living from whom she had not been divorced.

On appeal from a decree in chancery.

*Mr. Samuel Koestler* and *Mr. George Schmidt, Jr.,* for the appellant.

*Mr. Theodore D. Gottlieb,* for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The present appellant, John C. Tyll, filed his petition in the court of chancery seeking to have a ceremonial marriage entered into between himself and the respondent on June 23d, 1919, declared null and void, upon the ground that at the time thereof there was a subsisting marriage between the respondent and one Louis Bozear. Upon final hearing the petition was dismissed, and Tyll appeals.

The undisputed facts necessary to be considered in determining whether the present appeal is well taken are as follows: The man Bozear, referred to in the appellant's petition, entered into a ceremonial marriage in the city of Newark on October 16th, 1910, with one Franciszka Naszka. So far as is known there was no issue born of this marriage, and shortly after it took place the parties separated, and the Naszka woman returned to Austria, which was the place of her birth and original home, and has not been seen or heard of since the year 1911, so far as the testimony shows.

On September 1st, 1916, approximately five years after the Naszka woman had been last heard of, the man Bozear and the present respondent were married in the town of Chatham, in this state, by the Rev. R. A. Mahoney, and shortly afterward Bozear left the respondent, and they have not since lived together. A child was born of this marriage.

On June 23d, 1919, the appellant and the respondent were married, in the city of Newark, by the Rev. F. Rolinski, and they lived together as husband and wife until some time in the month of May, 1921. A child was born of this marriage.

The man Bozear was living at the time of the marriage of the parties to this suit, and the present respondent has never been divorced from him.

We think it must be presumed that the ceremonial marriage between the man Bozear and the woman Naszka, in October, 1910, was a valid one. This being so, the question arises, What was the status of the marriage between Bozear and the present respondent? As has been stated, the Naszka woman returned to Austria in 1911, and has not since been seen or heard of. The law ordinarily presumes a continuation of life until seven years have elapsed after a person has been last heard of. But this presumption is not a conclusive one; and, where that presumption would, as in the present case, render the party against whom it is raised guilty of a bigamous marriage, and would stamp his child as a bastard, the presumption of innocence of crime overcomes that of continuance of life, even though seven years have not elapsed. And it was for this reason that this court held, in the case of *Vreeland* v. *Vreeland, 78 N. J. Eq. 256,* that where a former husband of the defendant in that case had disappeared and been unheard of for a period of more than three but less than four years, at the end of which time the defendant had remarried, the second marriage was presumed to have been a lawful one, the presumption of continued life having been overcome by the presumption of the innocence of the defendant of the crime of bigamy. Under the doctrine of this case, therefore, the marriage between Bozear and the respondent must be presumed to have been a valid one.

This being so, what is the status of the present parties? At the time of their marriage the respondent had a husband living, from whom she had not been divorced. She was therefore not competent to enter into a valid marriage contract with the appellant, and the attempted marriage between them was void. Consequently, the appellant was entitled to the relief he sought, provided that when he married the respondent he was ignorant of the fact that she then had a husband living, from whom she had not been divorced. If he had this

knowledge, and, notwithstanding it, went through the marriage ceremony with the respondent and cohabited with her for more than a year, the fact that he afterward tired of his bargain did not entitle him to the relief that he now seeks from a court of equity. In order to entitle him to a decree of nullification, he was bound to prove not only the former marriage of the respondent to Bozear, the fact that the latter was alive when he (the appellant) married the respondent, and that Bozear and the respondent had not been divorced; but, further, that when he married the respondent, he did so in ignorance of these facts, and under a belief that she was free to marry him, if she desired to do so. The burden rested upon him to prove not only all of these facts, but also his own innocence of any intentional violation of the law by a preponderance of the evidence; and this he failed to do, so far as the last factor—*i. e.,* his own innocence—is concerned. Looked at in the light most favorable to him, the best that can be said is that the testimony was in equipoise—that is, that he did not bear the burden which the law imposed upon him of proving his innocence by a preponderance of the evidence.

For this reason, we think, the decree under review should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, KATZENBACH, WHITE, GARDNER, ACKERSON, VAN BUSKIRK—12.

*For reversal*—None.