FRANK FROMM, appellant,

v.

CATHERINE HUHN, respondent.

[Decided January 25th, 1924.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"The parties were married December 20th, 1916, prior to which date defendant had contracted another marriage, and her former husband was then alive. She had commenced suit in this court for divorce from her former husband, by petition filed June 27th, 1916, which suit was uncontested, and a decree *nisi* was granted her January 2d, 1917, and a final decree July 3d, 1917. The parties to the present suit lived together until February 26th, 1922, when petitioner left defendant because of domestic quarrels and they never resumed marital relations. Petitioner claims that he did not learn until February 27th, 1922, of the fact that at the date of his marriage to defendant she had not been divorced from her former husband, and he filed his petition in this cause April 18th, 1922. The parties have one child.

"The question open for determination is whether or not on December 20th, 1916, the date of their marriage, petitioner knew of defendant's prior marriage and also knew, or should have known, that she had not then obtained a decree of divorce from her former husband; or, not knowing of defendant's prior marriage and subsequently ascertaining that fact, whether he did not also learn that she had not obtained a final decree of divorce from her former husband until after she had married petitioner and thereafter continued to live with her, as husband and wife, for two years before he left her for another reason.

"Petitioner's testimony is that he had known defendant several years before their marriage and had courted her a year or more; that when he married her he did not know of her prior marriage and believed her to be a single woman; that he did not learn of her prior marriage until some time in 1920, when she told him she had been married and divorced and promised to show him her divorce papers, but never did; that he did not discover that she was not divorced when she married him until February 27th, 1922, when he called on Mr. Gannon, her solicitor in her divorce suit, and ascertained the facts; that he loaned her mother $100 in installments in 1916 and that defendant knew of such loans; that he did not give defendant money to pay the expense of obtaining a divorce from her former husband; that he had a quarrel with the witness Herron over defendant before he (petitioner) married defendant and that Herron then told petitioner he (Herron) was engaged to marry defendant but that Herron did not say defendant was a married woman and was not divorced and that petitioner did not tell Herron he knew it and had money to get her divorce.

"Defendant testified that she told petitioner in March, 1916, that she was a married woman and could not marry him; that he agreed to pay for a divorce for her and gave her $100 in installments, which she sent to her solicitor, Mr. Gannon, as she received them; that petitioner did not loan the money to her mother, who (she testified) was then earning money and was in receipt of a pension; that when she applied for a license to marry petitioner, she stated in her application that she was a single woman because petitioner did not want anyone to know of her prior marriage, and petitioner's sister was present when the application for the license was made out; that before her marriage to defendant the witness Herron told petitioner she was a married woman and that afterward the petitioner told her Herron had told him that defendant had been married before, and that he had told Herron he knew all about it; that after the taking of testimony in her divorce suit before the master was con-

cluded, Mr. Gannon told her everything was all right, from which she thought she was free to marry again; that upon receiving copies of her decrees *nisi* and final from Mr. Gannon she at once showed them to petitioner; that she never lived with her former husband after marriage, and endeavored to keep secret the fact of that marriage, and was known to her friends by her maiden name.

"Mr. Gannon testified that he never saw petitioner prior to February 27th, 1922, when petitioner called on him to inquire about defendant's divorce, and that he (Gannon) then informed petitioner of the dates of the decrees *nisi* and final; that defendant paid him $95 for his services in her divorce suit, in installments from May 13th, 1916, to November 27th, 1916; that after testimony in her suit before the master was concluded he told her 'That is all,' and on December 18th, 1916, he wrote her a letter addressed to her in her maiden name, in which he said: 'I have been advised by the clerk in chancery that a decree *nisi,* granting you a divorce, has been entered. I will procure a certified copy of this decree in the near future and forward the same to you.'

"Herron testified that in the winter of 1916, before the parties to the suit were married, he had a quarrel with petitioner, during which he told petitioner that he (Herron) was engaged to marry defendant, and that petitioner replied that he (petitioner) was engaged to her; that witness then told petitioner that defendant was a married woman and could not marry petitioner; that petitioner replied that he knew it and knew she was not divorced, and that he had money to get her a divorce.

"A sister of petitioner testified that she was present at the quarrel between Herron and petitioner; that petitioner did not say he knew defendant was a married woman or that he would give defendant money with which to get a divorce; that nothing was said in her presence about a divorce.

"The defendant's mother is an inmate of an insane asylum, and cannot testify with respect to the loans petitioner claims to have made her.

"The impression I get from the evidence is that prior to the marriage of the parties, petitioner knew of defendant's former marriage, financed her divorce proceedings, knew of the letter of December 18th, 1916, to her from Mr. Gannon, and when that letter was received, believed she was free to marry again and married her the next or the following day; that after the marriage he saw copies of her decrees *nisi* and final, and continued to live with her as husband and wife with knowledge that the decree *nisi* had not been entered for more than two weeks after their marriage and the decree final six months later.

"If at the time of their marriage he did not know of her former marriage, but learned of it in 1920, and also learned that the impediment to the marriage which existed December 20th, 1916, had been removed, and he continued to live with her as her husband, their relations were lawful and he is not entitled to have his marriage annulled. *Robinson* v. *Robinson, 83 N. J. Eq. 150; affirmed, 84 N. J. Eq. 201.* But the case need not be decided upon the impression in favor of the defendant, which the evidence makes on my mind, because the burden is on petitioner to prove that he married defendant without knowledge of the fact that she then had a husband living from whom she had not obtained a divorce. He must show his own innocence of any intentional violation of the law (*Tyll* v. *Keller, 94 N. J. Eq. 426*), and I consider that he has not sustained the burden which the law casts upon him, by a preponderance of the evidence.

"The petition will be dismissed."

*Mr. Edward Stover,* for the appellant.

*Mr. J. Raymond Tiffany,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons filed in the court below by Vice-Chancellor Fielder.

Peoples Water Co. *v.* Millville.          *95 N. J. Eq.*

*For affirmance* — THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, HEPPENHEIMER, GARDNER, ACKERSON, VAN BUSKIRK, CLARK—13.

*For reversal*—None.