The petition is for annulment, under section 1, subsection 5 of the Divorce act — petitioner having married defendant at the age of fifteen years and four months, and not having confirmed the marriage after attaining the age sixteen.
It appears from the evidence before the master that the marriage was performed by a civil magistrate, and that it was never consummated; the wife says that she did not regard it as a binding marriage, but only as an engagement, that that is what she was told it was, and that such is in accordance with the Italian understanding and custom which requires a civil marriage to be followed by a religious ceremony; that the ceremony or engagement was had at the insistence of her mother. The husband was twenty-nine years of age — nearly double the age of petitioner. She *Page 422 
continued to live with her mother, and, finally, after about two years, ran away and was married, in Trenton, to Antonio Stilitano, with whom she lived as husband and wife — one child being born to them, and still living — until her mother ascertained her whereabouts and caused her arrest on a charge of bigamy. No indictment was found by the grand jury. The wife says that until that time she did not know that the first marriage was binding; that immediately, she and Stilitano separated and have continued to live separately ever since, although he has supported her and the child.
The master finds and reports as true the allegation of nonage and of no confirmation of the marriage, but reports adversely to the decree on the ground that she comes into court with unclean hands, having committed adultery with Stilitano.
He also calls attention to the fact that there was no corroboration of petitioner's testimony as to residence, although he finds and reports that at the time of filing the petition she was a bona fide resident of this state, which is a jurisdictional requirement under section 5 of the statute.
He does not report any findings as to petitioner's belief that the marriage was not binding, and, hence, no bar to her subsequent marriage to Stilitano, although in a prior report, on a preliminary reference as to petitioner's having leave to prosecute in forma pauperis, he states that he is satisfied that the second marriage was made in good faith under the belief that there had been no marriage with Pennello.
I am not prepared to say that the marriage and living with Stilitano, if occurring in good faith and under the belief that there had been no marriage with Pennello, is sufficient to deprive petitioner of the right to annulment. It must be regarded as settled, I take it, since the opinion of the court of errors and appeals, in Tyll v. Keller, 94 N.J. Eq. 426, that the maxim of unclean hands and the maxims cognate thereto are applicable to, and will be invoked by the court sua sponte, in suits for annulment upon whatever ground brought. But the maxim of unclean hands is not one capable of exact delimitation. Ordinarily, at least, to justify or necessitate *Page 423 
its application, some element of moral turpitude on the part of the suitor must appear. In Rooney v. Rooney, 54 N.J. Eq. 231,
where the husband was suing for annulment of a second marriage induced by his false and fraudulent representation to defendant that he had no prior wife living, this element is strikingly apparent. It was also present, though in a lesser degree, inTyll v. Keller, supra, where the husband sought annulment of a marriage with a woman whom he knew to have been previously married to a man still living, and failed to show that he had reasonable ground for believing the prior marriage to have been dissolved.
I deem it unnecessary to determine this question, for the reason that I think the petition must be dismissed on jurisdictional grounds. Numerous instances of cases more or less analogous to the present case may be found in Gordon v.Gordon, 141 Ill. 160; Pratt v. Pratt, 157 Mass. 503, andDarrow v. Darrow, 159 Mass. 262, showing the conflict of opinion as to the application of the maxims mentioned.
On the jurisdictional question, if it were a mere matter of insufficient corroboration of petitioner as to the facts of her residence in this state, animo manendi, it is probable that that was an inadvertent omission, and I doubt not could readily be supplied if leave were granted in that behalf. But the defect is much more serious than that.
It appears that the marriage took place in New York, and that both petitioner and defendant were domiciled at White Plains, in New York, both before the marriage and after the marriage, living in the home of petitioner's mother until the petitioner ran away to New Jersey. The mother and defendant still live there. Presumably, petitioner's father lives there too; it appears that he there signed consent to the marriage in 1921, and there is no proof or intimation of his death or removal.
The circumstances are very similar to those in Blumenthal v.Tannenholz, 31 N.J. Eq. 194, where this court denied its jurisdiction of a suit brought by an unemancipated minor, whose parents were domiciled in Canada, for annulment of marriage on the ground of fraudulent misrepresentation by *Page 424 
the defendant, and in that case the marriage had been performed in this state. The court held that the legal domicile of the complainant was that of her father, Canada, and that complainant's actual residence in this state for eighteen months did not operate to change it, and that since the husband was not domiciled here, this court was without jurisdiction.
So, in the present case. Petitioner was a minor when she commenced this suit, and still is. There is no evidence of emancipation, other than the consent to the marriage in question. If it be considered that there is insufficient proof of change of status by valid marriage, her domicile is still legally that of her parents — New York — and under the authority of theBlumenthal Case, the defendant being also domiciled in New York, this court has no jurisdiction. If it be considered that there is sufficient proof of change of status by valid marriage, her domicile became that of her husband — New York. It so continued during coverture unless she acquired a separate domicile elsewhere by her husband's consent or because of matrimonial offense by the husband. Rinaldi v. Rinaldi,94 N.J. Eq. 14; approved in Floyd v. Floyd, 2 N.J. Adv. R. 638
(at p. 641); 95 N.J. Eq. 661.
It will be observed that the marriage is voidable only, not void; it is valid, and coverture continues unless and until decree of nullity be pronounced. The husband did not consent to her acquiring a domicile in New Jersey, nor did he commit any matrimonial offense. She deserted him. In Jimenez v. Jimenez,93 N.J. Eq. 257 (at p. 261), the chancellor raised the doubt whether, under such circumstances, a wife could acquire a domicile here to enable her to sue for annulment of a voidable marriage. In the Rinaldi Case, supra, which was a nullity suit on the ground of non-age, brought by a wife living in New Jersey but whose matrimonial domicile was New York, where the husband still lived, the chancellor settled that doubt adversely to the present petitioner, holding (at p. 19) that she could acquire a domicile separate from that of her husband only by her husband's consent or by conduct on his part such as would constitute *Page 425 
cause entitling her to decree of divorce or judicial separation. It would seem clear that the Floyd Case, supra, contains an express affirmation of that determination (at pp. 640, 641).
There is nothing in the proofs in the present case even intimating that any circumstances existed giving the petitioner justifiable cause for leaving her husband; the proofs do show that the leaving was without his consent. She has not acquired a legal domicile in New Jersey, and this court is without jurisdiction.
The petition will be dismissed on that ground. This will not deprive her of the opportunity to seek relief in the courts of New York.