The petitioner alleges that on May 20th, 1923, a ceremony of marriage was performed by a rabbi of the Jewish faith between him and the defendant, and that prior thereto the defendant had been lawfully married to one Frank Linsenmyer, which marriage had not been dissolved or annulled. An exemplified copy of divorce proceedings in the circuit court of the thirteenth judicial circuit in and for Hillsborough county, Florida, wherein Florence Linsenmyer is named as complainant and Frank Linsenmyer defendant, was admitted *Page 667 
in evidence, purporting to show that the complainant and defendant were married on July 16th, 1916; that said defendant deserted her in the month of January, 1919; that she was a resident of Tampa, Hillsborough county, Florida, and had been a resident thereof continuously for more than two years preceding the commencement of said suit, May, 1922, and that the defendant, as far as complainant was informed and believed, was a resident of the city of New York, State of New York. It appears also thereform that the defendant Frank Linsenmyer was not personally served with process in said suit, and no appearance was entered by him or in his behalf; that service of process was made upon him by publication, the order of publication being published in a newspaper circulated in Hillsborough county, Florida, a certified copy thereof posted at the court house door in the city of Tampa, Florida, and a copy thereof mailed to him "at New York City, State of New York." A final decree was entered in said suit on July 10th, 1922, purporting to dissolve the alleged marriage of said parties.
The petitioner alleges that the aforesaid decree was obtained by fraud perpetrated upon the court, the defendant herein having fraudulently represented that she had resided in the State of Florida for a period of two years before the filing of her bill of complaint (a residence within the state for such a period of time being one of the statutory requisites of jurisdiction), and because thereof said court was without authority to grant said decree. The defendant, by her answer, admits the marriage ceremony between her and the petitioner on May 20th, 1923, and "that previous thereto she had been lawfully married to one Frank Linsenmyer named in said petition, "but she denies that she was lawfully married to said Frank Linsenmyer at the time the ceremony of marriage between her and the petitioner was performed, and says that Frank Lensenmyer was not her husband on May 20th, 1923. She denies also that the aforesaid decree was fraudulently obtained. No proof was adduced of the alleged marriage between the defendant and Frank Linsenmyer, other than such as may said to be gleaned *Page 668 
from the exemplified copy of the aforesaid divorce proceeding, which includes a typewritten transcript of purported testimony before a special master in chancery indicating that the complainant testified that she was married to the defendant in New York City on January 31st, 1916, and lived and cohabited with him until January, 1919, when he deserted her; and the defendant's testimony in the case sub judice that she was married to Frank Linsenmyer on January 31st, 1916, and lived with him until December, 1920, when she left him. There is a patent variance in said testimony. No proof was adduced that Frank Linsenmyer was alive on May 20th, 1923, except the testimony of Nat Keller, a brother of the petitioner, who claims to have accidentally met Linsenmyer on the platform of the subway at Fourteenth street and Fourth avenue, New York City, around November or December, 1925, when he merely said "hello," and a statement attributed to the defendant in her aforesaid divorce proceeding, as indicated by the transcript aforesaid, that she saw Linsenmyer once after he deserted her, when he visited the place where she and her son were living in Jersey City (the date of the latter incident is not mentioned, but it doubtless refers to a time prior to May 20th, 1923), and said statement is manifestly erroneous, because there is no proof that the defendant at any time lived in Jersey City. Though such transcript is included as part of the exemplified copy of the divorce proceeding aforesaid, it is without legal effect to substantiate the testimony attributed to the defendant herein, who was the complainant therein. The transcript is not authenticated or verified by the oath of the stenographer, nor has its accuracy been otherwise established; it is not evidence of the purported facts appearing therein; it is without probative value. Newark v. Cook, 99 N.J. Eq. 531; 22 C.J. 440, 441.
I place no credence in the statement of the petitioner's brother, Nat Keller, of his meeting Frank Linsenmyer, as mentioned by him. He testified that he lived in the same apartment house in New York City with the defendant and Frank Linsenmyer, who, as far as he knew, lived together *Page 669 
there about a year or a year and a half. He removed from said house while the Linsenmyers continued to reside there. While no dates are mentioned, I gather, from his entire testimony, that he removed from said house prior to December, 1920. There is no proof that said witness saw Frank Linsenmyer at any time after the witness removed from the house wherein the Linsenmyers continued to live until the alleged meeting in the New York subway, as testified to by him. He did not know Linsenmyer well, he merely knew him by sight. He manifested on cross-examination that he was not positive as to his testimony with reference to said Linsenmyer. I was not impressed at the hearing of the cause with the demeanor or truthfulness of said witness, whose testimony appeared to be uncertain and indefinite, and, as to the alleged meeting with Linsenmyer in November or December, 1925, appeared to lack sincerity. The impression I gathered from my observation of him while he was upon the witness-stand, and the manner in which he testified, was that he was endeavoring to bolster up that which he knew to be a pertinent part of the petitioner's case — evidence of Frank Linsenmyer being seen alive at a time subsequent to the marriage of the petitioner and the defendant. In Riehl v. Riehl, 101 N.J. Eq. 15 (at p. 22), Chancellor Walker says: "The trier of facts is the judge of the credibility of witnesses, and does not have to believe a particular witness or witnesses."
The defendant, in December, 1920, entered the petitioner's employ as housekeeper (a formal agreement in writing was made in January, 1921, wherein she is mentioned as having been employed as manager of a hotel owned by petitioner), and continued in his employ until April or May, 1922, when she went to Florida. She attributes to the attorney who represented her in her divorce proceeding the deception she practiced upon the court in alleging and testifying that she was a resident of the State of Florida from February, 1920. Her said attorney, by his deposition, which is in evidence in the case sub judice, contraverts her testimony that he was a party to such deception. The fact is that she went to Ybor *Page 670 
City, Florida, from Farmingdale, New Jersey, in April or May, 1922, left Florida in August, 1922, went to Lynbrook, Long Island, where she resided until she married the petitioner on May 20th, 1923, and then went to live with him in Farmingdale, New Jersey. The petitioner accompanied the defendant to the railroad station when she left Farmingdale, New Jersey, and saw her buy her railroad tickets for Ybor City, Florida, but he says that he was not aware that her journey was for the purpose of instituting divorce proceedings against Frank Linsenmyer. He admits that when she returned to Florida in August, 1922, she made known to him that she had obtained a decree of divorce from Frank Linsenmyer through the Florida court. The defendant says: "I told Mr. Keller all about my divorce, and how I got it, and so on," and "Oh, I told him, locally, that some of my folks were born in the state, and that counted in, and that is how I happened to get the divorce before the regular time had expired." The petitioner had ample time, between August, 1922, and May 20th, 1923, to have made investigation as to the legality of said decree. He was on friendly terms with the defendant. The proofs show that he addressed letters and telegrams to her while she was in Florida, and also that he addressed letters to her between December, 1922, and May, 1923, while she was residing at Lynbrook, Long Island; but he made no inquiry whatever in regard to the legality of said decree, or the circumstances under which same had been obtained. It was his duty, in my judgment, to make inquiry as to the legality of the decree of divorce which the defendant informed him she had obtained during her few months sojourn in Florida, prior to his marriage to her. He could as readily have ascertained, prior to his marriage with the defendant, the fraudulent means resorted to by her in obtaining her aforesaid decree of divorce, as he did subsequent to January, 1926; and while it may not have been easy for him to have ascertained the fact that Frank Linsenmyer was not dead (if such was the fact), prior to his marriage to the defendant, he could at least have made some effort to do so. Riehl v. Riehl, supra (at p.23). In the *Page 671 
case cited, Chancellor Walker refers to the opinion of Vice-Chancellor Leaming in Eddy v. Barmore, Docket 29 (at p.272) (conclusions filed December 26th, 1907, not officially reported), speaking of prior marriage and showing that the former spouse was not living at the time of the second marriage: "It may not be easy to establish that fact; but at least some effort should be made to do so."
The defendant testified that a couple of months after her marriage with the petitioner, he, in the course of a quarrel with her, insinuated that she was not his wife, and asked her how she knew she was his wife. She says that after a child was born as the fruit of their marriage, the petitioner would often say to her that she was not legally married to him. The petitioner says that it was not until January, 1926, that he first suspected that the defendant's Florida decree of divorce was not what it should be; and when asked what then caused him suspicion, he said that whenever he and the defendant had a quarrel she would say to him, "Why, I can go to Florida and get a divorce off you just as quick as I did off the first man."
The petitioner says he had no sexual intercourse with the defendant after the time of a knife incident which he testified to — and which appears, from the testimony and a letter referred to, to have occurred prior to January 9th, 1926 — yet he testified he had sexual intercourse with her until "the last part of January, 1926." The presumption is that while the parties resided together as husband and wife, sexual intercourse was indulged in. In Woodward v. Heichelbech, 97 N.J. Eq. 253 (atp. 255), Vice-Chancellor Bentley says: "So long as human nature remains as it is and always has been, no court should be asked to find that there has been no sexual congress between a man and his wife except upon proof of the most satisfactory and convincing kind."
Notwithstanding the petitioner instituted his annulment suit by petition filed June 24th, 1926, and caused process therein to be served upon the defendant on July 3d 1926, the defendant testified he continued to have sexual intercourse with her until about Thanksgiving Day, 1926. Such *Page 672 
conduct upon his part, in view of his alleging in his petition filed in the suit then pending that she had perpetrated a fraud upon him in effecting a marriage union with him, is reprehensible. The petitioner's duty, under the law, was to cease living with the defendant pending his suit for nullification of their marriage; but he disregarded his duty in this respect and continued to live with her until December 4th, 1926. Barbour v.Barbour, 94 N.J. Eq. 7; Marsh v. Marsh, 14 N.J. Eq. 315, 318;Chapman v. Chapman, 25 N.J. Eq. 394. In the Marsh Case,supra, Chancellor Green cited Sullivan v. Sullivan, 2 Add.Eccl. 299, wherein it is said the husband is censurable for cohabiting with his wife during pendency of a suit to try the validity of the marriage. In the Chapman Case, supra, appears a quotation from 2 Bish. Mar. D. § 384: "When a suit is pending for divorce from bed and board, or from the bond of matrimony, or for declaring a marriage duly solemnized void from the beginning, it is legally improper for the parties to live in matrimonial cohabitation, whatever is to be the result of the suit." In Marsh v. Marsh, supra, it is said: "A regard to public decency, as well as the settled usage of the court, requires that under such circumstances the parties should not live together."
The defendant testified that between June and November, 1926, while petitioner indulged in sexual intercourse with her, she stated to him that she felt — inasmuch as he had instituted a suit against her claiming that she was not his wife — as though she was not married to him, and he replied that she was his legal wife until the law pronounced otherwise. The petitioner did not deny this testimony.
The petitioner assisted the defendant to pack her belongings when she left his abode on December 4th, 1926; yet, in an affidavit made by him in proceedings pendente lite, he stated "she left the household of petitioner of her own free will and accord without giving any reason for her departure."
I formed the opinion while the petitioner was testifying, and while observing his mannerism, that he was not entirely truthful. In January, 1926, he requested Samuel Abrahams, *Page 673 
a New York attorney, to investigate the defendant's divorce proceeding in Florida, and as a result of a report made to him by Mr. Abrahams in May, 1926, he, on the advice of another attorney, arranged to have two witnesses present at his home at a time when he asked the defendant to leave. He stated this occurrence must have been in May or June, 1926. Notwithstanding he suspected, as he says, in January, 1926, that the defendant was not his lawful wife, and instituted suit against her for annulment of their marriage by petition filed June 24th, 1926, and she, at his request, left his abode on December 4th, 1926, he, nevertheless, summoned her to return to his home to nurse him during a serious illness a short time prior to the date of the hearing of the casesub judice. He testified with respect thereto: "I was very bad that night; I suppose I would have been a dead man; and she was very good to me." It is quite incredible to me that the petitioner would have summoned the defendant to nurse him in what he may have thought to be his last illness if he really believed she had perpetrated such a gross fraud upon him as alleged in his petition.
Though the petitioner became suspicious, as he says, of the legality of the defendant's aforesaid decree of divorce in the early part of January, 1926, he, by his own admission, had sexual intercourse with the defendant "some time in the last part of January, 1926."
Equity will refuse its aid where the complainant has been guilty of any unconscionable conduct which does not amount to legal fraud. Eaton Eq. 74.
It is not alone fraud or illegality which will prevent a suitor from entering a court of equity; any really unconscientious conduct, connected with the controversy to which he is a party, will repel him from the forum whose very foundation is good conscience. Pom. Eq Jur. (4th ed.) § 404.
Inasmuch as the testimony of Nat Keller, the petitioner's brother, is the only semblance of proof as to the defendant's alleged former husband, Frank Linsenmyer, being alive after the month of January, 1919, when defendant says he deserted *Page 674 
her, other than the statement attributed to the defendant, which is hereinabove referred to and which I regard insufficient as proof of his being alive at or after May 20th, 1923, the presumption of law that the defendant was not, on May 20th, 1923, when she was married to the petitioner, the wife of Frank Linsenmyer, is tenable and should prevail.
The dissolution of the marriage relation is a proceeding which the law does not favor. Pinkinson v. Pinkinson, 92 N.J. Eq. 669.
The burden of proof is on the petitioner to prove his claim that at the time of his marriage with the defendant she had a lawful husband living. Before the trier of the facts, whether a jury or the court, would be justified in finding for the petitioner, who seeks the annulment of his marriage, the evidence to substantiate his case as alleged must be clear, convincing and satisfactory, and the relief sought by him ought not to be granted unless the evidence in substantiation of his allegations is so cogent and conclusive as to preclude any other result.
While it is alleged by the petitioner, and admitted by the defendant, that on January 31st, 1916, the defendant and Frank Linsenmyer were united in marriage, it is not alleged nor proved that at the time when the defendant is said to have been united in marriage with said Linsenmyer he was a single man, or that no lawful impediment existed which might render such marriage void. To make a marriage legal it is not sufficient to go through a ceremony, legal in form, but it must appear that the parties are legally competent to contract with each other. United States v.Green, 98 Fed. Rep. 63 (at p. 65).
While the law presumes a continuance of life until seven years have elapsed from the time the person was last heard of (2 Comp.Stat. p. 1904), such presumption is not conclusive; and inasmuch as there is no proof in the case sub judice that Frank Linsenmyer was alive on May 20th, 1923, when the petitioner and defendant were married, other than as hereinabove mentioned, which I regard as inconclusive, and the presumption of continuance of life, if regarded, would make *Page 675 
the defendant guilty of a bigamous marriage, stigmatize (if not bastardize) the legitimacy of the child born to the petitioner and defendant, while living together in a marriage union at least colorably lawful, and make the petitioner himself guilty of adultery, the presumption of the defendant's (and petitioner's) innocence of crime overcomes that of the continuance of life of Frank Linsenmyer, even though seven years had not elapsed. Tyll
v. Keller, 94 N.J. Eq. 426.
A divorce (and likewise an annulment) can only be had where there is a marriage (Riehl v. Riehl, supra; Feickert v.Feickert, 98 N.J. Eq. 444); consequently, the petitioner is obliged to prove affirmatively that the defendant, at the time she and the petitioner went through the form of a marriage ceremony, on May 20th, 1923, was then the lawful wife of Frank Linsenmyer.
The petitioner's counsel urged that the defendant is presumed to know the law, and, therefore, cannot escape the consequence of her fraudulently obtained decree of divorce. Citing Taub v.Taub, 87 N.J. Eq. 630; Dolan v. Wagner, 95 N.J. Eq. 1. If such presumption is chargeable to the defendant it must likewise be chargeable to the petitioner; therefore, if the petitioner be sustained in his insistence upon the application of the aforesaid presumption, the same presumption would be applicable to himself, particularly inasmuch as he was cognizant of the fact that the defendant had only been in Florida (the state in which the decree of divorce was obtained) a few months (from April or May, 1922, to August, 1922), and she having reported to him upon her return therefrom that she, in the interim (July 10th, 1922) had obtained a decree of divorce from Frank Linsenmyer, whereas, a bona fide
residence of at least two years within the State of Florida was a prerequisite to confer jurisdiction upon the courts of said state to warrant the granting of a decree of divorce upon the ground of desertion. Counsel for the petitioner says: "It is true that he" [referring to the petitioner] "was told by Mrs. Linsenmyer that she had obtained a divorce in Florida, but of the law of Florida, and of the circumstances under which said divorce proceeding was obtained *Page 676 
he was totally ignorant." If the presumption of knowledge of the law is attributable to the defendant — and likewise attributable to the petitioner — it cannot reasonably be said that the petitioner was justified in having remained quiescent as to the means whereby the defendant obtained her aforesaid decree of divorce.
A court of equity will never lend its active aid to a party who, by artful silence, has gained an unfair advantage over another. The Erie Railroad Co. v. Delaware, Lackawanna andWestern Railroad Co. et al., 21 N.J. Eq. 283, 298; nor will this court condone credulity. Woodward v. Heichenbech, supra, 257.
It appears to me that the equitable doctrine of clean hands is applicable to the petitioner in the case sub judice. In Dolan
v. Wagner, supra (at p. 8), Chancellor Walker, in referring to the decision of the court of errors and appeals in Tyll v.Keller, supra, says: "Here is an unequivocal declaration, as I take it, that the doctrine of clean hands applies in this class of cases, and that no one can successfully annul a marriage who entered into it with knowledge that either one had a former spouse living * * *."
Fraud is never presumed but must be strictly proved. Feickert
v. Feickert, supra. To entitle the petitioner to a decree of nullification he is bound to prove not only a lawful marriage between the defendant and Frank Linsenmyer, the fact that Linsenmyer was alive on May 20th, 1923, when the petitioner and defendant were married, and that the marriage between the defendant and Linsenmyer had not been dissolved or annulled, but also that when he, the petitioner, married the defendant, he was in ignorance of the facts above stated, and in the honest belief that the defendant was free to marry him. The burden rests upon him to prove not only all of these facts, but also his own innocence of any intentional violation of the law by a preponderance of evidence, and this, in my judgment, he has failed to do. Tyll v. Keller, supra (at p. 429); Vreeland
v. Vreeland, 78 N.J. Eq. 256; Fromm v. Huhn, 95 N.J. Eq. 728
(at p. 731), bottom.
If, as I regard the fact to be, the petitioner is chargeable *Page 677 
in law with knowledge that the defendant was not free to marry him when he went through the form of ceremony of marriage with her, and, notwithstanding, went through a marriage ceremony with the defendant, and thereafter cohabited with her, from May 20th, 1923, to December 4th, 1926, to gratify his lustful desires, the fact that he may have tired of his bargain — as was said in the case of Tyll v. Keller, supra — does not entitle him to relief from a court of equity.
The law is well settled that a presumption of divorce from a prior marriage arises from a subsequent marriage. Disregarding, therefore, the aforesaid Florida decree of divorce, it may reasonably be presumed that the Linsenmyer marriage, if it were a lawful union, was dissolved by divorce at the suit of Linsenmyer.
In Sparks v. Ross, 79 N.J. Eq. 99; affirmed, Ibid. 649, the court (at p. 102) says: "While a presumption of divorce from a prior marriage arises from a subsequent marriage, that presumption is necessarily dispelled when it affirmatively appears that no divorce has, in fact, been decreed in the only jurisdiction in which a divorce could properly be granted." There is no proof in the case sub judice that the State of Florida (in which the divorce decree in question was obtained) was the only jurisdiction in which a divorce decree could lawfully be granted dissolving the marriage between the defendant and Frank Linsenmyer, assuming said parties to have been lawfully married.
In Vreeland v. Vreeland, supra, it was held that where a former husband of the defendant in that case had disappeared and been unheard of for a period of more than three, but less than six years, at the end of which time the defendant remarried, the second marriage was presumed to have been a lawful one, the presumption of continued life having been overcome by the presumption of innocence of the defendant of the crime of bigamy.
It is a maxim of the law that every person shall be presumed innocent of a crime until proven guilty thereof, and if this presumption is to prevail the defendant has not been guilty of the crime of bigamy, and the petitioner has not been *Page 678 
guilty of the crime of adultery. Furthermore, the law presumes that children who have been born as the result of a ceremonial marriage are legitimate. All of these presumptions are antagonistic to the presumption of continuance of life of Frank Linsenmyer since January, 1919.
In Sparks v. Ross, 72 N.J. Eq. 762 (at p. 766), Vice-Chancellor Leaming says: "In United States v. Green,98 Fed. Rep. 63, Judge Shiras held that such a presumption was not overcome by proof of a prior ceremonial marriage, unless it should be also proven affirmatively that at the time of the prior marriage the parties were free from disabilities against a lawful marriage." And it will be observed that, in the case sub judice
there is no allegation or proof that Frank Linsenmyer was a single man at the time of his alleged marriage to the defendant; nor is it alleged or proved that no lawful impediment existed which might render void the marriage between Frank Linsenmyer and the defendant. Furthermore, it appears from the proofs that the defendant had entered into a marriage previous to that contracted with Frank Linsenmyer, and there is no allegation or proof that her first husband was dead, or that her marriage with him had been dissolved or annulled. The pertinency of the requirement of such allegation and proof is manifest when it is considered that if such first husband was alive at the time the defendant contracted marriage with Frank Linsenmyer, and the first marriage was not dissolved or annulled, the defendant's marriage with Linsenmyer would, in the absence of proof that such first husband was unheard of for a period of years, be void.
To establish a valid marriage it must appear that the parties are legally competent to contract with each other. In many cases it may be fairly found as an inference of fact that there was competency to contract marriage from evidence showing a marriage ceremony, legal in form, followed by cohabitation, birth of children, and a failure to question, on the part of anyone, the validity of the marriage thus entered into. But no proof has been adduced as to the Linsenmyer marriage, other than such as may be gleaned from the testimony *Page 679 
of the petitioner's brother (Nat Keller) as to Linsenmyer and the defendant living in the same apartment house with said witness in New York City, where they were known to said witness as husband and wife, and the admission of the defendant that she was the wife of Linsenmyer. Such proof, in my judgment, is insufficient to establish a lawful marriage as between Linsenmyer and the defendant. She, in stating that she was the wife of Linsenmyer, may have honestly considered herself so to be; but where, as in this case, it is claimed by the petitioner that the defendant is not legally his wife, and assigns as a reason therefor that the defendant was previously married to Frank Linsenmyer, and that such marriage was subsisting at the time of the defendant's marriage with the petitioner, mere cohabitation by Linsenmyer with the defendant, and their reputed marriage, as indicated by the testimony of Nat Keller, and the aforesaid admission of the defendant, is insufficient to establish a lawful former marriage of the defendant as alleged by the petitioner.
There is a distinction between the fact of marriage and the evidence thereof; and the acknowledgment of the marriage by the parties does not constitute a marriage but is merely evidence of it, and is not conclusive evidence thereof. The law is so positive in requiring a party who asserts the illegality of a marriage to take the burden of proving it, that such requirement is enforced though it involves the proving of a negative. Senge
v. Senge, 106 Ill. App. 140. See, also, Riehl v. Riehl,supra.
In 1 Bish. Mar. D. (6th ed.) § 457, it is said:
"Every intendment of the law is in favor of matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of the proofs, the law raises a strong presumption of its legality; not only casting the burden of proof on the party objecting, but requiring him throughout, and in every particular, plainly to make the fact appear, against the constant pressure of this presumption, that it is illegal and void * * *." "And the strength of the presumption increases with the lapse of time through which the parties are cohabiting as husband and wife. It being for the highest good of the parties, of the children, and of the community, that all intercourse between the sexes in form matrimonial should be such in fact, the law when administered by enlightened judges, *Page 680 
seizes upon all probabilities, and presses into its service all things else which can help it, in each particular case, to sustain the marriage, and repel the conclusion of unlawful commerce."
The above is also cited and quoted in Sparks v. Ross,72 N.J. Eq. 762 (at pp. 765, 766).
In Michaels v. Michaels, 91 N.J. Eq. 408, it was held that where the validity of a marriage is attacked upon the ground that one of the parties to it had a husband or wife living at the time it was contracted, the party asserting its invalidity must not only prove the former marriage, but also that the former husband or wife was living at the time of contracting the second marriage. It was also held that, in the absence of proof to the contrary, the law will presume that a man was not alive at a given time, when the consequence of his being alive at that time is that another person has committed a criminal act and certain children are thereby made illegitimate.
In Schaffer v. Schaffer, 88 N.J. Eq. 192; affirmed, 89 N.J. Eq. 549,
it was held that proof of a ceremonial marriage and living together in matrimonial relation raises a presumption of the legality of the marriage, and such presumption can only be overcome by clear and conclusive evidence of the validity of an alleged first marriage, and that such marriage subsisted at the time the second was entered into. The burden of showing this is on the petitioner, and to the extent of negativing every reasonable possibility of its invalidity. See, also, Sparks v.Ross, 72 N.J. Eq. 762; affirmed, 75 N.J. Eq. 550.
I do not regard the defendant's admission of marriage to Frank Linsenmyer, by her answer filed in this cause, as of sufficient probative force to obviate the necessity of the petitioner making affirmative proof thereof. Chancellor Walker, in Riehl v.Riehl, supra (at p. 789), citing Van Zile Eq. Pl. Pr. §301, says: "Generally it may be said that a party will not be held to admissions that may be shown to be made by him as statements in a pleading, especially if not under oath." While the defendant's answer, in the instant case, appears to be signed by the defendant, it is not sworn to; and even though the defendant's admission be considered as binding *Page 681 
upon her, it will not suffice as proof of the fact of marriage in a case such as this.
I appreciate that the Divorce act provides that a decree of nullity of marriage may be granted in a case where it appears that either of the parties had another wife or husband at the time of the second or other marriage, and also that where a marriage is dissolved because thereof, such marriage shall be void from the beginning. I have in mind, also, that P.L. 1924ch. 144 p. 318, purports to legitimatize children born of a ceremonial marriage, even though the marriage be annulled or declared void.
In a suit for the annulment of a marriage, and particularly in the case sub judice, considering what I regard to be the weakness of the proofs upon which the petitioner relies to establish his cause of action, the court should not resort to inference in order to substantiate the petitioner's material allegations. Inferences are not sufficient always to establish facts, and a court of equity ought not, without at least substantial reason therefor, give elasticity thereto.
If, as claimed by the petitioner, the defendant was lawfully married to Frank Linsenmyer prior to her marriage to the petitioner, and said Linsenmyer was alive on May 20th, 1923, and the Linsenmyer marriage subsisted when the defendant and the petitioner were ceremonially married, the latter marriage is, under the provisions of the Divorce act, void ab initio, and no decree of this court is required to declare such result. My view of this case, under the facts and circumstances thereof, is that this court should not by decree declare the marriage of the petitioner and the defendant to be invalid.
 I will advise a decree dismissing the petition. *Page 682