On May 6th, 1907, the petitioner was married to the defendant. After said marriage the parties lived together for many years, and seven children were born to them, all living except the eldest, who died in 1922. The petitioner has deserted his family, and the evidence strongly indicates that he is living with another woman.
The disgusting details of the case appear to be: That when the defendant was about thirteen years of age she was married *Page 401 
to one Ford, who, from the testimony, was a widower with children, and who was at that time, and had been for four years last past, living with defendant's mother in apparent illicit relations.
After living with Ford for several years, the defendant left him, and meeting the petitioner, was seduced by him. Finding herself with a child by him, they agreed to be married — he saying that he did not think the marriage with Ford was legal.
The defendant's mother and Ford appeared on the scene, and it was decided that a double marriage should take place. The program was followed. The petitioner and defendant were married in the presence of her husband and her mother, and at the same time the defendant's mother and Ford, the husband of the defendant, were married.
There is no doubt in my mind as to the petitioner's knowledge of the defendant's prior marriage.
At the time of the hearing I said:
"Now, gentlemen, I think I had better give you my views of this case before you begin your argument.
"This is the most disgusting case that has ever been before me. It is clear that there has been an utter and absolute disregard by these people of all morals and moral laws. If, as the defendant claims, she was married at this age of thirteen, it seems almost impossible that any officer authorized to perform a marriage ceremony would not at least have had his attention called to the fact of her immature age. It seems incredible to believe that any mother, living apparently in open adultery with a man, would permit her child of the age of thirteen, even if married without her knowledge, to come back to the same homestead and live with this man as husband and wife, this man who, so far as the testimony now before me shows, is the father of children born to the mother.
"It seems incredible and almost impossible to believe that the girl, becoming pregnant by another man, should be permitted by this mother and the former husband to marry the man who is then the cause of her condition, and not only to permit it, but to assist in it and also, as has been testified, *Page 402 
participate in a double marriage. The mother and husband of the girl, the mother and her former paramour, marrying at the same time — the same minister officiating. It does not seem possible — does not seem credible, does not seem in the present day of civilization, no matter how small the community may be, no matter if in one instance they have to go five or six miles to find a minister, another instance about three miles, that such things can exist. Nor does it seem credible to me — and I am not inclined to believe it — that this man never had any suspicion of such a thing until many years afterwards, after the wife had born him this number of children. His conduct since — and taking into consideration the fact that he apparently had no hesitancy to seduce the girl under eighteen years of age saying he did not know that she had already been married, it is hard to believe that he is entirely platonic in his relations with the housekeeper whom he has following him at different places of residence and that she is merely a housekeeper, to keep his cabin clean or in order, as he expressed it.
"The whole thing is such an impossible situation of absolute lack of morality that it is appalling.
"As the situation now stands the legal proposition is this: This marriage between this couple certainly was an invalid marriage. The marriage to Ford, so far as any testimony is concerned, was consummated after, so far as we know, the girl became perhaps of the age of eighteen — I am not so sure that it has been — but, nevertheless, there is nothing to show that it was not a bona fide marriage. I am not prepared to rule upon it. The testimony is too meagre, as to whether this marriage to Ford has ever been consummated after the girl became of a legal age; but can this man now come into a court of chancery with hands so unclean as his and ask for any relief in this court?
"There is, gentlemen, a considerable feature of law in this case — whether or not it is the duty of the court to declare a marriage, which may or may not have been illegal, if found to be illegal and never consummated, a marriage which, of course, would invalidate the second marriage, whether or not *Page 403 
it is the duty of the court, when the matter is brought before it, to say that that marriage was not — I mean the latter marriage — a legal marriage and that the results of that marriage are all legitimate or whether this is such a case that the rule which we so strictly enforce, that a petitioner in the court of chancery must come in with clean hands, should be enforced. I am clear and definite in my impression that if that rule is enforced in a case such as this, this man can receive no relief from this court.
"I will, Mr. Tuso, give you ten days to file a memorandum upon the points of law which I have suggested, giving to Mr. Oliver a copy thereof, and he to have ten days after the service of the memorandum to reply."
Briefs have been presented by each party. The law is that one who asks annulment of his marriage with a woman who had another husband living at the time of her marriage with the petitioner, must show by a preponderance of evidence that when he married her he was ignorant of the fact that she then had a husband living from whom she had not been divorced. Tyll v. Keller, 94 N.J. Eq. 426.
Following this case, the petition must be dismissed.