The petitioner herein filed a petition for divorce on December 29th, 1926. He alleges that he was "lawfully joined" in the bonds of matrimony, September 2d 1924, to his wife, Louise E. Riehl; that on December 2d 1924, the defendant deserted the petitioner, ever since which time, and for more than two years then last past, said defendant had willfully, continuedly and obstinately deserted the petitioner. The petition then alleges that both petitioner and defendant had been bona fide residents of this state continuously since their marriage and a long time prior thereto. The prayer is that the marriage between the petitioner and defendant be dissolved *Page 17 
for the cause aforesaid (desertion) according to the statute in such case made and provided, and for other and further relief. Such proceedings were thereupon had that the cause was referred to a special master (who endorses his name on the report, when only the solicitor's name should appear), who finds that fact of marriage; that the parties "consorted and lived together" up to and until December 2d 1924, on which date defendant deserted petitioner, and since then the desertion has been willful, continued and obstinate; that the reasons which caused or provoked the desertion were petitioner's announcement of the marriage to defendant's parents, which theretofore had been kept secret, want of affection for petitioner, and a desire on her part to be free from the bonds of matrimony. He found the fact of residence in the case of petitioner, and reported that no previous proceedings of any kind, nature or description had been instituted by either against the other, except the instant case and a petition for annulment of the marriage in question by the present petitioner against the defendant (61-250); that it appeared from an examination of the files, offered in evidence, that no citation was ever issued or served upon the defendant, and, therefore, under Rinehart v. Rinehart, 91 N.J. Eq. 354,
the nullity suit must be deemed to be immaterial in the present suit.
In no case is the wisdom of the present rule 263, promulgated November 10th, 1914, better illustrated than in this one. It provides that inquiry shall be made of the petitioner whether or not previous proceedings have been had between the parties respecting the marriage or its dissolution or the maintenance of the wife; and if so, what proceedings, and if the proceedings are files of this court, they shall be required to be offered in evidence.
In his deposition annexed to the master's report the petitioner swears that on the night of the marriage they occupied his room at Highland Park, and the next day his wife went home to her mother's at Davidson Mills, New Jersey; that until the middle of November, 1924, she visited his room; that the marriage was kept secret and he only met *Page 18 
her the time she would give him when she would go to his room, and they "lived" that way until around the middle of November, when she refused to see him any longer; that he went to her mother's home at Davidson Mills, December 2d 1924, and asked her to come back to him and she told him to go; that she would remain at home and would not live with him; there was present at the time Mr. Novotny, and her mother and sister; he told her mother and sister about the marriage in the presence of defendant; Louise admitted it, and they (the mother and sister) said it did not make any difference, she could not live with him anyhow; since then petitioner made many efforts to see his wife; he phoned her several times and asked her to meet him, she said she would, but did not; that he had written her six letters, from December 2d 1924, until the first of June, 1926, they were love letters and he had no copies of them. He was then asked the following leading question: "Q. In these letters did you say anything with respect to your wife joining you again or coming back to live with you?" And he made the following reply: "A. I constantly pleaded with her to come back." There was no foundation laid for the introduction of secondary evidence, and no right in the defendant to say what the contents of those letters was, to state a conclusion rather than facts upon which it was based. He was asked another highly leading question: "Q.
Did you ask her to come back in all these letters?" And the answer was, "A. Every one." He received no reply or replies; that his wife admitted she was fickle, that she did not want to settle down; that she had had sexual intercourse with the Rev. Dr. Hall, which statement was made in November, 1924.
John Novotny was sworn for petitioner, and deposed that he lived in New Jersey and had known petitioner about four years; knew the defendant from about June, 1924, was best man at their wedding; about the middle of February, 1925, witness had a conversation with defendant, trying to persuade her to come back to live with petitioner, and she said she was through with him for the rest of her life, she would never go back at all. He was present at the home of defendant's folks at Davidson Mills, December 2d 1924; that Mr. Riehl *Page 19 
broke the news that he had married defendant; that the mother was wroth and petitioner asked her in a "nice way" to let her daughter go and live with him, and her mother refused, her sister said that the best thing petitioner and witness could do was to go out of the house, witness went but petitioner stayed about five minutes; during the conversation defendant said to deponent that the best thing petitioner and he could do was to get out and save trouble. Petitioner said to defendant that he had a home for her, and her mother would not listen to it, and his wife would not listen to it; when Riehl came out he was "crying" and witness told him he was a fool for crying.
Anna E. Riehl, sister of the petitioner, was sworn for him, and gave some corroborating testimony. The most important thing she said was that defendant came to her mother's house one night (which was about April 20th, 1927), and in the presence of witness' mother took a letter out of her pocket, saying it had been written to her by her husband, witness' brother, and told witness to say to him very emphatically that she did not want him "to write no more letters to her," she did not answer him as she hated him.
There is thus proved ex parte, though not without some doubt as to some of the incidents, a case for the petitioner. And now, on examining the petition for nullity of marriage, the following astounding facts are discoverable: The dates are important.
The petition for nullity was filed July 3d 1926. It avers the marriage September 2d 1924; that petitioner and defendant never cohabited together nor established a home, although the marriage was consummated; that between September 2d and December 2d 1924, petitioner learned the respondent had withheld certain truths from him before marriage, and that she had committed gross fraud and misrepresentations before marriage, and that thereupon and immediately thereafter petitioner ceased to have relations with respondent, and has had no relations with her since December 2d 1924; that she had led him to believe that she was a virtuous woman before marriage, but he had learned (not saying when) that while respondent resided in Jersey City *Page 20 
(not saying when) her reputation was that of a "common prostitute," and that she confessed to him after their marriage that while she had been employed as a servant in the home of the Rev. Dr. Hall in New Brunswick, in 1922, that she had had illicit relations with him; that she stated to him (petitioner) after her marriage that "she had another husband to whom she had been married before September 2d 1924;" that she had gone to New York with George Funkhauser on a Sunday in March, 1924, and had returned on Monday afternoon following, and then said to petitioner, "I'll bet you'll be ashamed of me, I just got back;" that before the marriage respondent "carefully and deliberately" withheld from petitioner the fact that she had knowledge of the doings of certain of the parties in the well-known, and so-called, Hall-Mills murder case, and said: "I was too much for them [detectives and reporters seeking evidence], they could not get anything out of me;" that she had visited the Phillips farm with Mr. Hall alone; that she told petitioner that she had gotten $5,000 for her part in the matter and kept quiet about it. Here follows a long and detailed statement of facts alleged to have relation to part and parcel of the Hall-Mills tragedy. He concludes with the averment that he believes that the respondent is thoroughly cognizant of the facts which led to the murder of the Rev. Dr. Hall and Mrs. Mills, and that she (respondent) had not been a participant or an accessory to that crime, and prays that in consideration of the foregoing the marriage be declared null, and that he may have further and other relief.
This petition is signed by Arthur S. Riehl and his then solicitor. It has an affidavit of non-collusion annexed, as required. That was taken on July 1st, 1926, before a notary public of this state, and says "that this petition is not made by any collusion between him and the respondent in said petition for the purpose of dissolving or annulling their marriage, but in truth and good faith for the causes set forth in the petition."
Ordinarily, a bill in chancery is unverified, and when so, the complainant is not bound by every statement made therein, which is largely the suggestion of counsel. Generally it *Page 21 
may be said that a party will not be held to admissions that may be shown to be made by him as statements in a pleading, especially if not under oath. Van Zile Eq., Pl. Pr. § 301.
The petition herein for nullity, however, is signed by the petitioner, and it is a general rule that statements made by a person himself, bind him; at least prima facie. This, of course, applies strongly to a case of a signed statement, which is this case. Besides, our act providing for divorces and decrees of nullity of marriage (P.L. 1907 p. 474) provides in section 8 that the court shall not have jurisdiction unless the petitioner make his oath or affirmation, annexed to the petition, that his petition is not made by any collusion between him and the defendant, but in truth and good faith for the causes setforth in the petition. While this affidavit is not a general verification "that the facts, matters and things in the petition are true," nevertheless, no one can swear that a petition is preferred in truth and good faith for the causes set forth in the petition, without committing himself on oath to the causes set forth. So, that this petition for nullity is a signed statement and also a sworn statement by the petitioner.
Now, as to the dates: The petitioner herein filed his petition for divorce December 29th, 1926, and alleges that he was "lawfully joined" in the bonds of matrimony to his wife, Louise E. Riehl, September 2d 1924, and that she deserted on December 2d 1924, he went to her mother's house and she, defendant, visited his room until the middle of November, 1924, when she refused to see him any longer; that on December 2d 1924, he went to her mother's house and asked her to come back. The petition for nullity was filed long after these incidents are said to have occurred, namely, July 3d 1926. In it the petitioner avers the form of a marriage on September 2d 1924; that he, between September 2d and December 2d 1924, learned that she had withheld certain truths from him before marriage, that she had committed gross fraud and misrepresentations upon him and thereupon and immediately thereafter he ceased to have, and had, no relations with her; that she led him to believe she was a virtuous woman, but he had learned that she was a *Page 22 
"common prostitute," and she confessed to him after marriage that she had had illicit relations with the Rev. Dr. Hall, and that "she had another husband to whom she had been married before September 2d 1924;" that she had gone to New York with a certain man on a Sunday in March, 1924, and had returned the following Monday afternoon, and said to him, "I'll bet you'll be ashamed of me, I just got back;" that before marriage she "carefully and deliberately" withheld from him the fact that she had knowledge of the doings of certain parties in the well-known and so-called Hall-Mills murder case.
Leaving out for the present the allegations of her having concealed information of the Hall-Mills murder case, these signed and sworn statements amounted to this: That between September and December, 1924, the petitioner herein, relying upon his wife's conduct and statements, thereupon and immediately thereafter ceased to have relations with her, and prayed that in consideration of the foregoing, which includes her declaration of a prior marriage, the marriage between them be declared null and void. This, to me, looks like a desertion of her by him; and it is impossible for me to believe that this man who denounced his wife as a bigamist, a common prostitute and an adultress, and a woman cognizant of certain doings in a murder case, actually went to her on December 2d 1924, persuading her to live with him. I notice he does not go as far as his friend (an attendant on his marriage, and who went with him, apparently, to acquire information to enable him to be a corroborating witness in the divorce case), who says that he burst into tears when his wife "refused" to return to him.
The trier of facts is the judge of the credibility of witnesses and does not have to believe a particular witness or witnesses. A witness is not entitled to credit whose testimony is inconsistent with the common principles by which the conduct of mankind is naturally governed. Clark v. Public Service Electric Co.,86 N.J. Law 144. Testimony, although contradicted, should be submitted to the jury (that is, the trier of facts). Schmidt v.Marconi Wireless Tel. Co., Ibid. 183. And the trier of the facts, whether court or jury, has *Page 23 
the right to discredit altogether the testimony of a witness, where there is reason therefor, and to disbelieve him. The court of errors and appeals has held that the jury (and in chancery the court sits as the jury, in other words, tries the facts), are at liberty to discredit and reject certain testimony. State v.Lanto, 99 N.J. Law 94.
I am constrained to doubt the assertions of the petitioner in this case, and to disbelieve him because his assertions indicate an action that is contrary and inconsistent with the common practice by which the conduct of people is naturally governed. I cannot believe that a man will truthfully testify that he sought out and begged to return to him one whom he has, in a solemn pleading in a case in a court of justice, virtually accused of being a common prostitute, an adultress and being already married to another husband. I say virtually accused her, because he said that he had learned she was a common prostitute; and most of the other charges are made upon her confession to him. And quite apparently he believed them to be true. Good pleading required that he should have charged them to be true. But this makes no difference when the statement is leveled against the party making it; in that aspect it amounts to a confession by him. I hold, therefore, that he left her, as in fact he virtually says he did, with the purpose of having their marriage annulled for those causes, and yet he has discontinued that case. Perhaps he was insincere in that too. And it looks as though he might have been. He might have filed the petition for annulment from some motive not disclosed, but he swears to the truth of the contents of his petition for annulment, and he certainly swears to a different state of facts in the divorce suit. How can I be expected to believe what he says?
The rule is that none of the time occupied by the pendency of a former bona fide proceeding for divorce (or nullity) by one of the parties against the other, can be computed as part of the time of the desertion in a later case between them for that cause, does not apply when process was not issued in the former proceeding, or having been issued was never served personally or by publication and substituted service, and when the defendant was consequently not in court in the *Page 24 
former case. And, in such circumstances, the former proceeding is no impediment to the granting of a divorce in the later one.Rinehart v. Rinehart, 91 N.J. Eq. 354. And the same doctrine applies in nullity suits. Barbour v. Barbour, 94 N.J. Eq. 7.
In the Riehl Nullity Case the record shows that on July 3d 1926, a copy of petition was sent to the solicitor of the petitioner for service, together with a writ of citation. Now, that petition lay unprosecuted until November 5th, 1926, when the petitioner, through his then counsel, filed a petition stating that the defendant had filed no answer, and that he was desirous of discontinuing the prosecution of the suit, and that his petition for nullity be dismissed. Why so desirous because she did not reply? He never even summoned her to do that. Of course, no petition for dismissal is necessary. It is significant that no citation was ever served on defendant; she was never required to answer the petition for nullity. Riehl's affidavit is appended to that petition for dismissal, in which he swears that he is the complainant in the cause and that he has read the petition and knows the contents thereof, and that the same are true to his own knowledge. If he was informed of the state of the record by his counsel he only knew it by hearsay. If he knew the fact of his wife's not having filed an answer of his own knowledge he must have gotten it from her, which is unlikely; or he must have examined the docket in the clerk's office, which is even more so. It rather looks as though they had been in collusion or in conference.
On January 15th, 1927, an order was entered on the advice of an advisory master, dismissing the petition on motion of the petitioner's then counsel.
The question here arises, What was the duty of this man on being informed by his wife that at the time they were married she had another husband to whom she had been married before? There can be no doubt that where the validity of a marriage is attacked upon the ground that one of the parties to it has a husband or wife living at the time it was contracted (and the husband attacked it in the nullity suit), the party asserting its invalidity must prove its invalidity by showing that the former husband or wife was *Page 25 
living at the time of contracting the second marriage. Vreeland
v. Vreeland, 78 N.J. Eq. 256. And, so, if Riehl had gone on with the nullity suit, that is what he would have had to prove, either in a litigated or an ex parte case. Instead of going on, he chooses, for some unknown reason, to dismiss the nullity suit and commence a suit for divorce, alleging a woman to be his wife who had previously informed him that she was the wife of another. As was said by Vice-Chancellor Stevenson in Freda v. Bergman,77 N.J. Eq. 46 (at p. 49): "The complainant is not asking for any property, he is merely asking for a judicial declaration of a fact to which the court cannot shut its eyes, and in ascertainment of which great interest beyond those of the complainant may be involved." Now, it was, in my judgment, his duty to bona fide investigate that assertion by his wife, and even if he dismissed the nullity suit he should have sworn, in the present divorce case, that he had investigated the matter, stating what he had done, and was satisfied that no prior marriage existed, or that the other spouse was dead or divorced, if that proved to be the fact, offering, of course, the best evidence of which the nature of the case was susceptible. And as was said by Vice-Chancellor Leaming in Eddy v. Barmore, docket29, p. 272 (conclusions filed December 26th, 1907, not officially reported), speaking of prior marriage and showing that the former spouse was not living at the time of the second marriage: "It may not be easy to establish that fact, but at least some effort should be made to do so." Now, clearly, the law will not do a vain thing, and only people between whom the status of marriage exists can be divorced. A decree can be granted only as to parties who are married. Feickert v. Feickert, 98 N.J. Eq. 444,450.
In taking leave of the subject I cannot refrain from animadverting upon the manner in which the suit for nullity was pleaded. This record was necessarily introduced in evidence and is before me. Besides stating certain matters to be on information, and, apparently, belief, he does not charge them to be true. An allegation that complainant has been informed and believes, and, therefore, charges certain facts to be true, is held to be a sufficient averment. Dick. Ch. Prec. *Page 26 
(rev. ed.) 8, note, citing Wells v. Bridgeport Co.,30 Conn. 316. See, also, p. 323. This is the true rule of pleading in this court, and has been several times so held.
Another thing: It is an ancient rule of law that pleadings must contain only statement of facts relied upon, and not the evidence whereby those facts are to be proved. This court adopted a rule with reference to pleadings in 1915, which provides that all pleadings must contain a plain and concise statement of the facts upon which the pleader relies (and no others), and not the evidence by which they are to be proved. See rule 44. This is but declaratory of the common law of pleading. In the thirteenth paragraph of the petition for nullity the petitioner says that before the marriage, respondent carefully and deliberately withheld from him the fact that she had knowledge of the doings of certain principals in a well-known murder case. Then follow upwards of two typewritten pages of statements of conversations,c., which are mere recitals of evidence. A charge of the pertinent facts could have been made in about half a page.
The result reached is that the application for divorce in this case must be denied. The petitioner, however, will be given an opportunity to run down the question of his wife's alleged prior marriage, and show the court herein that no such marriage took place, or having taken place, that it has been dissolved by death or divorce. If the marriage turned out to be a fact, and that the other spouse was living at the time of contracting the present one, of course, he can have no divorce, not being married; but he may file a new petition for annulment upon the ground of prior marriage of defendant, and consequent nullity of this. If it be ascertained that there was no such marriage, or that it was no impediment to the one pleaded in this cause, the petitioner may, of course, file a petition for divorce for adultery, if he has such proof.
 Decree accordingly. *Page 27