The complainant invokes the aid of this court on the ground of its inherent jurisdiction over frauds, to decree cancellation of an alleged fraudulent certificate of birth ascribing to him the paternity of the child therein mentioned. The physician who attended at the child's birth caused a certificate to be filed with the local registrar of vital statistics pursuant to statutory requirement therefor. Said certificate was thereafter certified to the state registrar of vital statistics. The name of the child as stated in said certificate was Alice Gerardi. The name of the father of the child was stated therein as Albert Aimone. The name of the mother of the *Page 340 
child was stated therein as Lena Gerardi, who, at the time of the birth of said child, was a married woman, her husband's name being Rocco Passafaro. She was married to her said husband May 14th, 1918; they separated in 1920 and never lived together or were in the company of each other thereafter. Two children were born of the marriage, Lucia Passafaro, born October 3d 1918, and Josephine Passafaro, born January 20th, 1920. The child described in the certificate aforesaid was born March 13th, 1923. For some undisclosed reason said physician filed with the local registrar of vital statistics under date of July 23d 1923, a certificate requesting that the name of the child be changed in the certificate previously filed by him from Alice Gerardi to Alice Aimone. Such certificate was apparently filed under the authority of section 13 of chapter 109 of the laws of 1909. The physician who attended at the birth of said child, and who signed and filed both of the aforesaid certificates, was not produced as a witness herein although it was testified he was alive and practicing in Bergen county. For convenience the defendant who is impleaded herein as Lena Gerardi will be hereinafter described as the defendant. The complainant denies and the defendant avers complainant is the father of the child named in the aforesaid certificate. The proofs herein manifest that the complainant and said defendant were in the company of each other in such manner, under such circumstances, and for such periods of time, as to enable them to indulge in sexual intercourse, if they were disposed so to do. The defendant testified that complainant indulged in sexual intercourse with her, and that the child named in the aforesaid certificates was begotten as a result of such intercourse. The complainant's lack of frankness in testifying with respect thereto militates against him. The child was in court throughout the hearing of the case. I observed that there was a strong facial resemblance of the child and the complainant, commented thereon at the hearing, and called complainant's attention thereto. I consider the testimony of the defendant, as to the paternity of said child, coupled with the child's strong facial resemblance to the complainant, *Page 341 
strong indicia of the truthfulness of defendant's testimony that the complainant is the father of the child. In Gaunt v. State,50 N.J. Law 490 (at p. 494), the court cites Finnegan v.Dugan, 14 Allen 197, wherein it is said: "It is a well-known physiological fact that pecularities of feature and personal traits are often transmitted from parent to child. Taken by itself, proof of such resemblance would be insufficient to establish paternity; but it would be clearly a circumstance to be considered in connection with other facts tending to prove the issue on which the jury are to pass." In this court the chancellor is the trier of the facts of the case before him.Riehl v. Riehl, 101 N.J. Eq. 15. I make mention of the aforesaid rule of law notwithstanding I do not consider the casesub judice to be a proper one for an adjudication of paternity such as may be regarded as dispositive thereof, for the reason that complainant seeks extraordinary equitable relief which the court would not be warranted in granting to him unless the proofs herein be clear and convincing. The defendant testified that about a week before Christmas in the year 1922 she informed complainant she was six months in the family way, and he then said to her that he would stand the responsibility of the birth and would pay the doctor's and hospital expenses. In December, 1922, complainant was informed by a sister-in-law of the defendant that the defendant was about to give birth to a child of which he, the complainant, was said by defendant to be the father, and that he should pay the hospital bills and doctor's expenses. Complainant testified he informed defendant's sister-in-law that if the defendant had any complaint to make concerning him she should see him personally, and that he knew absolutely nothing about the matter. He did not on either of said occasions deny his paternity of the child. He testified that the matter rested just as it was, that he took no further cognizance of it, and that no action was taken against him, and he was not thereafter asked to contribute to the support of the child. He testified that the first information he had that the child was bearing his name was when he was informed the child was attending school *Page 342 
under his name, Aimone, which he variously stated as in September, 1928, and November, 1928. He several times stated while testifying that the child was registered in school as Alice Gerardi. In this he apparently erred. The defendant testified the child entered school in September, 1927, as Alice Aimone. It appears to me that complainant's inaction to obtain the equitable relief which he now seeks herein, when he was first informed that the child was bearing his name, may reasonably be regarded as in the nature of a tacit admission that he was the father of the child. His tacit acquiescence in permitting the child to continue in school under his name, when he knew because of the conversations between him and the defendant and her sister-in-law in December, 1922, that he was accused of being the father of the child, without remonstrance or recourse to equitable relief such as he now prays herein, should, in my judgment, be regarded most strongly against him in the case sub judice, particularly when we are mindful of the equitable maxim that equity aids the vigilant, not those who slumber on their rights. My consideration of the testimony of the complainant and defendant, and my observation of both of said parties while they were testifying, impressed me that the testimony of the defendant was more credible than that of the complainant. I was impressed that the complainant was not entirely truthful in his testimony. He was not frank. He was evasive and equivocal, so much so, that I several times commented thereon while he was testifying. The record shows such to be the fact. The complainant and his brother, Charles, testified that they observed the defendant and her husband talking together several times (for about five minutes at each time) in the month of June, 1922, the occasion being a carnival held under the auspices of the Moonachie fire department. I disbelieve them in such respect. The defendant denied such occurrences and I believe her. When complainant was interrogated as to how he remembered the time of such occurrence, he said: "Well, after I was called by this woman's sister-in-law in regard to what she told me about the birth, I started to think about what time I had *Page 343 
seen the two together." Complainant acknowledged that carnivals were held each year under the auspices of the Moonachie fire department, yet he could not recall the month when a carnival was held in any other year. He said defendant's husband was a performer (a wrestler) traveling with the carnival. He made no effort whatever to locate him or ascertain his whereabouts. The tenor of complainant's testimony with respect to the alleged carnival incident and his non-convincing manner while testifying with respect thereto, especially in view of defendant's denial of the alleged meetings with her husband at the time and place mentioned, strongly impressed me that the statements of complainant and his brother with respect thereto were untruthful and intended to persuade me that if he could establish to my satisfaction that there was such a meeting between defendant and her husband that the rule of law, based on presumption, that the child in question would be regarded as having been begotten by her husband, would tend to exonerate complainant of the charge of being the father of said child. I am of the opinion that complainant's conduct throughout, the resemblance of the child to him, the conversations with him by the defendant and her sister-in-law prior to the birth of the child, his knowledge that the child in September, 1927, was attending school under the name — Alice Aimone, and his lack of diligence in seeking equitable relief to cancel of record the birth certificate aforesaid, suffices to deny to him at this late day (the child being now past eight years of age) the equitable relief prayed herein. The complainant has not given any good reason for his lack of diligence within seven years prior to the institution of this suit to seek to have the birth certificate aforesaid expunged from the public record. The presumption of law that a child begotten during lawful wedlock, is legitimate, is not to be regarded as conclusive. After all — it is but a mere presumption — not an established fact. I have in mind the well-established rule of law that a child born during wedlock is presumed to be legitimate, and that before a married woman can succeed, inbastardy proceedings, in having one other than her husband declared to *Page 344 
be the father of her child, it is necessary for her to overcome that presumption by showing non-access of her husband. State v.Overseer of the Poor, 24 N.J. Law 533; La Ferra, Overseer of thePoor v. Watts, 7 N.J. Mis. R. 889; 148 Atl. Rep. 180. The presumption that a child born during wedlock is legitimate may be rebutted by satisfactory proofs of non-access between the husband and wife during the entire time in which the child must have been begotten. The proofs herein are sufficient, in my judgment, to warrant the conclusion that no sexual intercourse was had between said defendant and her husband, at any time when, by such intercourse, her husband could by the laws of nature be the father of the child. She alleges that the complainant is the father of her aforesaid child. It is not necessary to a finding against a putative father, in a bastardy proceeding, that the testimony of the mother of the child should be corroborated. The proceeding is of a civil nature, and does not, as in a criminal case, require proof of paternity beyond a reasonable doubt.Overseer of the Poor of Montclair v. Eason, 92 N.J. Law 199.
I regard such rule of law applicable by analogy to the case subjudice. I appreciate that the certificate in question is of such character that it is prima facie evidence of facts therein contained. P.L. 1909 ch. 109 § 10. While ostensibly complainant's purpose in the instant suit is to obtain a decree canceling the birth certificate aforesaid as a fraud upon him, it appears to me that his real purpose is by such means to have this court adjudge that he is not the father of the child mentioned in such certificate. Prayer (d) of complainant's bill is to such effect. Relief such as sought by the complainant herein might properly be granted by the court in an appropriate case, and upon appropriate proofs, for instance, to the husband of the defendant, if he was the complainant herein (Vanderbilt v.Mitchell, 72 N.J. Eq. 910), but I am not aware of any authority which would warrant the court to grant to the complainant the relief sought by him herein, especially under the facts and circumstances as established herein. To grant such relief to complainant would be tantamount to having the court determine the *Page 345 
paternity of the child in question (as sought by paragraph (d) of the prayer of the bill), and would be establishing a very questionable precedent. Such a determination, under the law, may be made in a bastardy proceeding wherein complainant be named as the putative father of the child, but it cannot be made in the case sub judice. Of course, a mother of a child should not be privileged to assert a particular individual to be the father of the child when she is a married woman and when the person named as the father of the child is other than her husband, who is living, and a certificate of birth ought not to be allowed to stand as evidence of the paternity of a child born out of wedlock if the proofs be clear and convincing that the putative father named was not, in fact, the father of the child. As stated inVanderbilt v. Mitchell, supra, "* * * the theory upon which the equity of the bill rests is not to establish a status, or, on the other hand, to disestablish a status, except for the special object of determining whether the information given to the physician by the wife was fraudulent, and whether thereupon the certificate itself, so far as it imputes to the complainant the paternity of the child, was fraudulent." It is a well-established rule of law that fraud is never presumed but must be established by clear and convincing proof thereof. No such proof of fraud has been established herein. The case sub judice is distinguishable from the case of Vanderbilt v. Mitchell, supra, which was before the court on demurrer to the bill of complaint. This court sustained the demurrer. The court of errors and appeals, reversing the decree of this court, held inter alia: "No one of the allegations of the bill of complaint presents an exception to the general rule that the facts alleged must be regarded as admitted under a demurrer, as must all the facts which can be implied by a reasonable and fair intendment." The bill of complaint in the cited case charged inter alia that the defendant, upon the birth of the child in question, falsely stated to the attending physician that the complainant (her husband) was the father of the child, and that the child was the lawful issue of the marriage between herself and the complainant, and that she *Page 346 
made such false statements to induce the physician to insert them in the birth certificate, which the physician did, transmitting the certificate to the bureau of vital statistics, where it was duly filed and recorded. Whatever the fact may be as to the paternity of defendant's child Alice, the proof in the case subjudice is not clear and convincing that the defendant falsely
stated to the physician who attended her at the birth of her child that the complainant was the father of the child. In the case of Vanderbilt v. Mitchell, supra, the defendant, by virtue of her demurrer to the bill of complaint, admitted the allegation therein contained that she had falsely stated to the attending physician that the complainant was the father of the child. The court held, in view thereof, that in making the certificate the physician was imposed upon by the false statements of the mother as to the paternity of the child, and certified, contrary to the fact, that the complainant was the father of the child, and therefore a court of equity had jurisdiction (1) to cancel such false certificate, or so much thereof as relates to and charges upon the complainant the paternity of the child; (2) to require the medical superintendent of the bureau of vital statistics to endorse the fact of the cancellation upon the record; (3) to enjoin the use of the original certificate, or copies thereof, as evidence; and (4) to enjoin the mother and the child from claiming for said child, by virtue of said certificate, the status of a lawfully-begotten child of the complainant. The court, in the cited case, held that a court of equity was the only tribunal which could afford adequate relief to the complainant "under the peculiar and somewhat novel circumstances of this case." In that case the child was alleged to have been lawfully begotten in wedlock. In the case sub judice there is no such pretense. The proofs herein evidence that defendant's child, Alice, is an adulterine bastard.
I will advise a decree dismissing the bill of complaint. *Page 347