This suit seeks specific performance of a contract allegedly made by complainant with Lillian Hirschmann, his sister, the defendant, whereby he seeks a return of certain life insurance policies he assigned to her, and a transfer of title to an Oldsmobile automobile. The bill also prays that Lillian and the defendants, Rose Hirschmann and Jonas Hirschmann, mother and brother respectively of complainant, be required to make discovery and give an accounting of the complainant's pharmaceutical business conducted and managed by them during the period of his service in the United States Armed Forces. *Page 24 
On December 2d 1942, the complainant married his present wife, Pauline. For seventeen years prior thereto he had been the head and support of his family aforesaid, maintaining the home wherein all of the above named resided together. The complainant had been at the times aforesaid, and still is, a licensed pharmacist of the State of New Jersey, owning and operating the business aforesaid on his real estate 1430 Queen Anne Road, West Englewood, New Jersey.
On December 1st, 1942, he was called for active duty in the United States Army. He alleges that upon receiving notice from his draft board calling him into the Army service, he told the defendants, his mother, sister and brother, that his induction would force him to close his pharmaceutical business. They thereupon declared that during his absence they would conduct the business for him. With that understanding he executed a power of attorney to Lillian and Jonas enabling them to conduct his business and to manage his real estate while he was engaged in the Army. He then gave Lillian a check for $777.47 for the alleged purpose of paying taxes, interest on mortgage, insurance premiums, and expenses on his property. As an additional provision and to enable Lillian to obtain loans, when and if necessary, to meet his expense commitments, he assigned to her the following life insurance policies in which the defendants are named as beneficiaries:
(a) Policy No. 4369401 — 20 year Endowment, with the Prudential Insurance Company of America, in the sum of $1,000, which policy matured on or about July 25th, 1943;
(b) Policy No. 4127-451 — 20 year Payment Life Insurance Policy with the Equitable Life Assurance Society of the United States in the sum of $2,500, which life insurance policy was taken out sometime in the year 1926;
(c) Policy No. 10634129 — 15 year Retirement Income Policy with the Equitable Life Assurance Society of the United States, in the sum of $5,000, which policy was taken out in March, 1938.
The policies, he alleges, were to be reassigned at the end of his Army service.
The Equitable Life Policy No. 4127-451, plus two other *Page 25 
policies on the life of complainant, which were not assigned, were the only policies upon which premiums were to be paid. The other aforesaid policies numbered respectively 4369401 and 10634129, which had been assigned, it will be observed, consisted of a fully paid-up policy, as well as a single premium retirement income policy.
The agreement to reassign the policies was denied by the defendant Lillian. She claims them as an outright absolute gift.
While the complainant was in the military service, the defendants Lillian and Jonas, and complainant's mother Rose, worked in and about his pharmacy, and were compensated weekly for their services in an amount fixed by them. In fact, complainant, in a letter to one or more of the defendants, in effect, told them they were underpaid and were entitled to more compensation for their labors than they were receiving.
At the opening of the hearing the complainant abandoned his prayer for an accounting, and also withdrew his suit against his mother and brother.
The defendant Lillian in her answer filed herein, and at the hearing, tendered the return of the aforesaid sum of $777.47 to the complainant; the complainant accepted her offer. The issue between the complainant and the remaining defendant Lillian now involves only the title to the insurance policies and to the automobile.
Complainant claims to have purchased the Oldsmobile automobile with his own funds, for use in his business. He said that he had title to the car placed in the name of the defendant Lillian purely for business reasons — to avoid legal complications that might affect the status of his business in the event the car would be involved in a negligence action; that at times prior to the purchase of the Oldsmobile, he had purchased other automobiles for his business and had placed the title to them in the name of Lillian. The latter contends that the automobile was in part paid for by her.
On April 23d 1943, the complainant was honorably discharged from the United States Army, and took up his residence with his wife in West Englewood, New Jersey. Immediately *Page 26 
thereafter he visited his mother, sister and brother and sought a retransfer of the business, a reassignment of his life insurance policies, the return of the $777.47, and a transfer of the title of the car to him. A heated discussion then took place; and after considerable argument the defendants finally agreed to a retransfer of the business to complainant upon his releasing and exonerating them from any claim in connection therewith. Lillian, however, refused to reassign the policies, or to give up title to the automobile.
The relations between the complainant and the members of his family prior to the time that he sought the return of his business, the title to the automobile, and the reassignment of the policies, was one of mutual trust and confidence. His request for the return of his assets, however, had the effect of reversing the relationship and substituting therefor a bitter controversy and consequent litigation.
I believe complainant transferred his business and assigned his policies of insurance to defendants only for the uncertain period of his military service. I am satisfied that he had that understanding and agreement with the defendants. That inference is justified by all the circumstances appearing in this suit. Prior to his induction into the Army, or until notice of his induction was served upon him, the complainant had no apparent reason to adjust his affairs, transfer his business which was profitable, turn over the aforesaid cash, or assign his policies of insurance as aforesaid. Knowledge of the uncertainties of a soldier's life in war undoubtedly prompted him to take that step. The defendants were the natural objects of his bounty. His aim was to give them in his absence all the financial protection he could afford. To show his devotion to his family he practically stripped himself of all his worldly assets. However, his generous attitude appears to be rewarded by evident ingratitude — particularly by his sister Lillian. The defendant's evidence of a gift is not clear, cogent or persuasive. Kelly v. Kelly,134 N.J. Eq. 316.
One of the policies, No. 4369401, in the Prudential Insurance Company of America, matured on or about July 25th, 1943, and became payable upon presentation of the policy. *Page 27 
Lillian endeavored to collect the principal due thereon, but the Prudential Insurance Company was restrained by an order of this court from paying it to her.
The policy No. 10634129 is a fifteen year retirement income policy for $5,000 in the Equitable Life Assurance Society of the United States; it provides for an annuity to the defendant when he reaches an advanced age. It does not seem reasonable that such a policy would be given outright to the defendant Lillian, who it seems would not benefit by it other than through its loan, or paid-up value. It was taken out by complainant as a financial protection to him in his old age.
The defendant admitted that she had paid but one premium on all the policies during complainant's absence in the Army. She admitted that nothing was paid by her to the complainant for the transfer of the assets aforesaid.
The fact that Lillian returned the $777.47, and the pharmaceutical business to the complainant, is, in effect, an admission of the existence of the agreement that the transfers and assignments aforesaid were conditional. The testimony of the defendant as to the alleged gifts is not convincing. See Riehl
v. Riehl (third headnote), 101 N.J. Eq. 15;137 Atl. Rep. 787.
The complainant testified that he had two other life insurance policies which he did not transfer to his sister because they had little or no loan value since they were only a few years old; and hence could not serve the purpose of obtaining loans for which the assignments of the other insurance policies had been made.
In Hackensack Trust Co. v. Nowacki, 124 N.J. Eq. 565;3 Atl. Rep. 2d 615, citing Hall v. Otterson, 52 N.J. Eq. 522
(at p. 528); 28 Atl. Rep. 907 (at p. 909), appears the following:
"In all transactions between persons occupying relations, whether legal, natural, or conventional in their origin, in which confidence is naturally inspired, is presumed, or, in fact, reasonably exists, the burden of proof is thrown upon the person in whom confidence is reposed, and who has acquired an advantage, to show affirmatively, not only that no deception was practiced therein, no undue influence used, *Page 28 
and that all was fair, open, and voluntary, but that it was well understood."
Vice-Chancellor Buchanan in the case of Reiley v. Fulper,93 N.J. Eq. 112; 115 Atl. Rep. 661, said:
"But proof of a mere general intent or purpose to make a gift is, of course, not sufficient. The donative intent which must be established is: First, an intent to make a gift as distinguished from an intent to make a transfer of ownership for consideration or an intent to make a mere transfer of possession; and secondly, an intent that the act which is alleged as the delivery or means of effectuating the gift should in fact operate to complete a then present change of ownership. In other words, the inquiry as to the intent must always be pursued with relation to the act of delivery, or that which is alleged to be the act of delivery. At the time that act occurred was there a co-existent intent by the donor that by that act a then present change of ownership by way of gift should be effectuated? If the answer be `No,' then no valid gift results; if the answer be `Yes,' then a valid gift will be the result, provided the act be such as the law says is sufficient to constitute a delivery."
The circumstances of the complainant's transfer and assignment all indicate he had no intent to make an absolute gift. I believe the truth in the instant case resides with the complainant.
I shall advise an order granting the relief sought by the complainant. *Page 29